COOPER *v*. BIGLY.

COOLEY J.:

---

David Cooper v. John Bigly, Thomas B. Bigly, Francis E. Eldred, Frank Vincent, DeWitt C. Holbrook, and Levi Bishop.

*Marshalling securities — sale should be made in inverse order of alienation.* — Upon the foreclosure of a mortgage upon premises which have been conveyed or incumbered in parcels subsequently, to the mortgage, the premises should be sold in the inverse order of such conveyances or incumbrances, unless the mortgagee will be prejudiced by having the property so sold. And this rule does not depend upon the existence or non-existence of covenants of warranty.

*Conveyances subsequent to mortgage — record of, not notice to mortgagee.* — A mortgagee cannot be affected by a subsequent conveyance or incumbrance of the mortgaged premises, of which he has no notice, and the record of such conveyance or incumbrance is not constructive notice to him.

*Release, by mortgagee, of part of his securities.* — Where, therefore, A had a mortgage upon lots one, two and three, and B had a subsequent mortgage upon lot three, and they having no knowledge of conveyances which had been made of lots one and two subsequently to their mortgages, conjointly released a part of lot three, it was *held* that B's equitable right to have lots one and two first sold was not thereby affected.

*Purchase by mortgagee of the equity of redemption — when will not merge the mortgage.* — The purchase, by a mortgagee, of the equity of redemption will not merge the mortgage, where there are intermediate rights, or the interest of the mortgagee requires that the titles should be kept separate.

*Change of title pending suit — supplemental bill.* — The purchaser of a parcel of land at a foreclosure sale may file a bill to compel the foreclosure of a prior mortgage upon that and other property, and to have the other property first sold; and where, pending a suit in such case, the prior mortgagee purchases the interest of the complainant, he may file an original bill, in the nature of a supplemental bill setting up the change of title, and is entitled to the same relief that could have been had under the original bill.

COOPER v. BIGLY.

*Mis-description of property in a mortgage — the effect as to record notice.* — Where property was described in a mortgage as "lot number one, in section twenty-eight, on the Forsyth or Porter Farm, in the city of Detroit — being on the south-west corner of Fort and Sixth streets," which description was correct, except as to the section, which should have been eighteen, and it did not appear that there was a section twenty-eight on the farm named, it was held that the record of such mortgage was notice to subsequent purchasers of the property.

Whether, where a description is so framed that it may be intended for one lot as well as another, the record of the instrument is not sufficient to put a purchaser of either upon inquiry. *Quere.*

*Covenant in a deed — exception in, when not void for uncertainty.* — Where the covenant against incumbrances in a deed contained an exception of a "certain mortgage," without giving the date or amount of the mortgage, or the name of the mortgagee, but the proof disclosed only one mortgage upon the property, it was held that such exception was not void for uncertainty, but would be understood as referring to the only mortgage proven in the case.

*Held, also,* that such exception could not affect the grantee's equitable rights in reference to the order of sale of the property covered by said mortgage.

*Marshalling securities — consideration of conveyances subsequent to mortgage, who may not question.* — One who purchases a parcel of land, subject to a mortgage upon that and other property, and with full record notice of a conveyance of the other property, gets no greater rights by virtue of such purchase than his grantor had; and in a suit for the foreclosure of the prior mortgage, and to marshal the securities, he is not in a position to attack such deed for want of consideration.

*Heard July* 10.    *Decided October* 17.

Appeal in Chancery from Wayne Circuit.

The facts are sufficiently stated in the opinion.

*F. H. Canfield* and *A. Pond,* for complainant:

1.  The several parcels of land should be sold in the inverse order of their subsequent alienation.

The general rule of marshalling assets and securities by Courts of Equity, in the inverse order of alienation, is too well settled in this country to require argument in this cause to sustain it. We refer, however, to the following, which are but a few of the many authorities which sustain our general proposition. — 1 *Story's Eq. Jurisprudence,* §633; *Mason v. Payne, Walker's Ch. R.,* 459; *Howard Ins. Co. v. Halsey,* 4 *Sandf.,* 565; 8 *N. Y.,* 271; *Chapman v. West,* 17 *N. Y.,* 125; *La Forge Ins. Co. v. Bell,* 22 *Barb.,* 271; *Commercial Bank v. Reserve Bank,* 11 *Ohio,* 444; *Guoin v. Knapp,* 6 *Paige,*

COOPER *v.* BIGLY.

35; *Grovesneur v. Lynch*, 2 *Paige*, 300; *Stuyvesant v. Hale*, 2 *Barb. Ch. R.*, 151; *Ayers v. Husted*, 15 *Conn.*, 504; *Hastings' Case*, 10 *Watts*, 303; *Shannon v. Marsellis*, 1 *N. J. Ch.*, 413; *Wickoff v. Davis*, 3 *Green. Ch.*, 224.

By his purchase from the bank, Cooper acquired all the legal and equitable rights of his grantor in the premises. Whatever equities were capable of being enforced by the bank against the present defendants, can now be enforced by Cooper.— *Griffith v. Griffith*, 9 *Paige*, 315; 1 *John's Ch. R.*, 213; *Noyes v. Burton*, 29 *Barb.*, 631.

2. There has been no merger of complainant's mortgage by reason of the warranty deed which he received from John Bigly, of the Fort street and Woodward avenue lots.

The doctrine is well established that a deed of the equity of redemption will not operate as a merger of a prior mortgage, where there are intervening incumbrances. — *Snyder v. Snyder*, 6 *Mich.*, 470; 1 *Washburn on Real Property*, 564.

3. The release of a portion of the Woodward avenue lot, by Cooper, does not affect his lien as against Vincent.

In the marshalling of the securities no account will be taken of the fact that a portion of the premises have been released, unless it be shown that the prior mortgagee had notice of the subsequent conveyance or lien. — *Wheelwright v. Depyester*, 4 *Edwards' Ch.*, 232; *Howard v. Halsey*, 8 *N. Y.*, 271 — 4 *Sand.*, 565; *Talmage v. Wilgers* 4 *Edwards' Ch. R.*, 239, note; *Stuyvesant v. Hale*, 2 *Barb. Ch. R.*, 151; *James v. Brown*, 11 *Mich.*, 25.

4. The record of Cooper's mortgage was constructive notice of his lien on the Fort street lot.

Although a portion of the description of this lot contained in the mortgage is erroneous, still it is sufficient to identify the premises intended to be conveyed;

and so much as is erroneous will be viewed as mere surplusage, and rejected on this ground. The mortgage correctly describes this lot as lot one, on the south-west corner of Fort and Sixth streets, in the city of Detroit, and this, we submit, was sufficient to put the parties upon inquiry, and the record, therefore, was constructive notice to them. — *Worthington v. Hyler,* 4 *Mass.,* 196; *Jackson v. Clark,* 7 *Johns.,* 218; *Jackson v. Loomis,* 18 *Johns.,* 81; 19 *Johns.,* 449; 7 *Maine,* 109; 6 *Cow.,* 706; 29 *N. H.,* 499; 10 *Cush.,* 241; 6 *Ind.,* 62; 6 *Hill,* 453; 12 *Wheat.,* 520; 15 *N. Y.,* 534; 7 *Mich.,* 69.

5. That the record of Thomas B. Bigly's deed was constructive notice of his rights under it, to Vincent, Eldred, Holbrook and Bishop. — *Chapman v. West,* 17 *N. Y.,* 125; 2 *C. L.,* 2734, 2748; *Parks v. Jackson,* 11 *Wend.,* 442; *Chase v. Woodbury,* 6 *Cush.,* 143; 2 *Lead. Cases in Equity,* 245, 248; *Ins. Co. v. Bell,* 22 *Barb.,* 65.

6. The exception contained in the clause of warranty in Thomas B. Bigly's deed of the river property will make no change in the order of marshalling.

The excepting clause is void for uncertainty. The ambiguity is patent on its face, and we insist upon the familiar rule that parol testimony is inadmissible to explain a patent ambiguity. — 2 *Parsons on Contracts,* 75; *Baylis et al. v. the Attorney General,* 2 *Atk. Ch.,* 239; *Hunt v. Hort,* 3 *Brown's C. C.,* 311; *Miller v. Travers,* 8 *Bing.,* 244; 5 *Bing. N. C.,* 425; 3 *Atk.,* 257.

A *mere quit claim,* or *a deed without any covenant* whatever, would be sufficient to raise the equities for which we contend in the marshalling of these securities. If, then, such a deed would enable Thomas B. Bigly to insist that the Fort street lot should be sold first, how can a mere *exception* in the covenant affect or change the order of sale? — *Ellison v. Ellison,* 1 *Lead. Cases in Equity, p.* 297, *note and cases cited.*

7. The pleadings and proofs do not present a case

in which the validity of Thomas B. Bigly's deed can be litigated.

1st. A cross-bill should have been filed if the parties desired to raise that question.

Bigly was bound only to meet the case made by the bill. He is not supposed to know, neither is he under obligation to reply to the affirmative allegations of fraud made by his co-defendants, until he is *properly* brought into Court for that purpose. — *Story Eq. Plead.*, §392, *Lube*, 39–103; 3 *Daniel Plead. and Prac.*, 1742; 10 *N. J. Ch.*, 107; 5 *How.*, 143; 9 *Cowen*, 147; 4 *J. J. Marsh*, 37; 4 *Ala.*, 461; 1 *Hill on Mort.*, 303; 18 *Vt.*, 231.

2d. There is no equity in the case made by Eldred and Vincent, which entitles them to question the validity of this deed.

The deed, even if fraudulent and void as to creditors, was binding between the parties, and all claiming under or through them. Eldred claiming, as purchaser of the Fort street lot from John Bigly, obtained by his purchase no right or equity which his grantor did not possess, and cannot claim to set up a fraud or want of consideration which his grantor would be estopped from asserting. — *Randall v. Phillips et al.*, 3 *Mason*, 378; *Killinger v. Reidenhaner*, 6 *S. & R.*, 531; *Hubbs v. Brockwell*, 3 *Sneed*, 574; *Chapin v. Pease*, 10 *Conn.*, 69; *Fox v. Willis*, 1 *Mich.*, 321; 1 *Amer. Lead. Cases*, 45, note and cases there cited; *McKibben v. Barton*, 1 *Mich.*, 213; *Greenwood v. Brodhead*, 8 *Barb.*, 593; *Crippen v. Hudson*, 3 *Kernan*, 161; 2 *Story Jurisprudence*, §1216, b.

8. The facts set forth in the original bill present a case for the relief therein prayed. The Insurance Bank, as the owner of the Woodward avenue lot, had a right either to file a bill to redeem or compel Cooper to foreclose his mortgage, which had become due, and upon which the interest was rapidly accumulating. — 5 *Wis.*, 151; 4 *Ala.*, 452; 4 *Ala.*, 477.

And the bank, by its conveyance of the Woodward avenue lot to Cooper, parted with all its interests in the subject matter of this suit, and could no longer prosecute the same. Cooper, as the assignee or vendee of the bank, acquired the right to revive the cause in his own name, and to prosecute it to a decree for the foreclosure of his mortgage. — *Story's Eq. Plead.*, §329, §330, §349; 3 *Daniel Ch. Plead. and Prac.*, 1663, 1667, 1672; *Cooper Eq. Plead.*, 76; 2 *Barb. Ch. Prac.*, 63, 65; *Webster v. Hitchcock*, 11 *Mich.*, 56; *Sedgwick v. Cleaveland*, 7 *Paige*, 287; *Simons & Stewart*, *Ch. R.*, 491.

The fact that Cooper was a *nominal* defendant to the orginal bill is no objection to his right to revive the cause in his own name, as complainant, by means of the supplemental bill. — 17 *Eng. Law and Eq.*, 265; 19 *Eng. Law and Eq.*, 244.

*Jerome & Swift*, for defendant Vincent:

1. The rule of sale in the inverse order of alienation, upon a decree of foreclosure, depends upon whether or not the deed is one of warranty. — *Donohue v. Woodbury*, 6 *Cush.*, 143; *Bradley v. George*, 2 *Allen*, 392; *George v. Kent*, 7 *Allen*, 16; *Welch v. Beers*, 8 *Allen*, 151; *Kilbourne v. Robbins*, 8 *Allen*, 466; *Bigelow v. Bush*, 6 *Paige*, 343; 1 *Washburne's Real Property*, 818.

In two cases decided in this country, which are oftener cited than any others, as establishing the rule above mentioned, the deed to the first purchaser contained a covenant again incumbrances. — *Gill v. Lyon*, 1 *Johns. Ch.*, 447; *Cloweds v. Dickinson*, 5 *Johns. Ch.*, 235. See, also, *Guion v. Knapp*, 6 *Paige*, 35; *Skeel v. Spraker*, 8 *Paige*, 182.

In many other cases in which this rule is recognized or established, it will be found that the fact of the first sale being with warranty is mentioned as important, even if it is not relied on as the ground of the decision. We

find it decided that where a person merely buys the equity of redemption, the land remains the primary fund for the payment of the mortgage; and that the mortgagor, if compelled to pay it, will be entitled to be subrogated to the rights of the mortgagee.

As where a man buys land subject to the mortgage, though he does not assume the payment of it. — *Jumel v. Jumel*, 7 *Paige*, 591; *Stebbins v. Hall*, 29 *Barb.*, 524·

So where a person buys the equity of redemption on a sale on execution. — *Tice v. Anin*, 2 *Johns. Ch.*, 125; *Heyer v. Pruyn*, 7 *Paige*, 465; *Russell v. Allen*, 10 *Paige*, 249; *Morton v. White*, 2 *Carter*, 663; *Weaver v. Toogood*, 1 *Barb.*, 238.

So upon sale upon a foreclosure of a second mortgage. — *Cox v. Wheeler*, 7 *Paige*, 248; *McKinstry v. Curtis*, 10 *Paige*, 503; *Matthews v. Aiken*, 1 *Comst.*, 595; *Roll v. Smalley*, 2 *Halst. Ch.*, 461; *Bailey v. Gould*, *Walker's Ch.*, 478.

2. The conveyance to Thomas Bigly was both voluntary and fraudulent.

A conveyance with a fraudulent intent is void even as to subsequent creditors. — 1 *Am. Lead. Cases*, 71.

The Court must, at least, find that there was some secret reservation for the benefit of John Bigly. This is often referred to as a badge of fraud. So also was the possession by John Bigly. — *Bank of U. S. v. Houseman*, 6 *Paige*, 526; *Smith v. McDonald*, 25 *Geo.*, 377; *Callan v. Statham*, 23 *Howard*, 477.

In *Agricultural Bank v. Pallen*, 8 *S. & M.*, 357, in speaking of the rule of sale in the inverse order of alienation, the Court say: "The interposition of equity, of course, pre-supposes that the alienation was made in good faith and for a valuable consideration." Can that be said of the conveyance to Thomas Bigly?

A subsequent sale to a *bona fide* purchaser makes a prior voluntary conveyance *prima facie* fraudulent. —

*Cathcart v. Robinson,* 5 *Peters,* 265, 281; *Enders v. Williams,* 1 *Metc.,* (*Ky.,*) 346; *Wells v. Treadwell,* 28 *Miss.,* 717; *Brown v. Burke,* 22 *Geo.,* 574.

The principle to be deduced from these cases is, that a mere volunteer stands in the place of his grantee, and will be postponed in equity to purchasers and mortgagees. — *Duvall v. Wilson,* 9 *Barb.,* 487.

But we shall be told that the defendants on the bill and answers filed in this cause are not entitled to go into the inquiry, whether the deed to Thomas Bigly was fraudulent.

On this point we cite the following authorities: *Union Insurance Co. v. Van Rensselaer,* 4 *Paige,* 85; *Tower v. White,* 10 *Paige,* 395; *Hopkins Ch. Rep.,* 277; 1 *Barb. Ch. Rep.,* 353; *Caruthers v. Hall,* 10 *Mich.,* 40; *Benedict v. Gaylord,* 11 *Conn.,* 332; *Tyler v. Hammond,* 17 *Mass.,* 198, 211; *Davis v. Rainsford,* 11 *Pick.,* 211; *Lincoln v. Wilder,* 29 *Paine,* 182; *Hunt v. Rector,* 13 *Missouri,* 497.

*S. D. Miller,* for defendant Eldred:

1. The supplemental bill was demurrable. The original bill was, in fact and effect, a bill to redeem, and nothing more. Whatever else was prayed was merely incidental and ancillary.

This position only becomes important, and is only urged because, although it might, perhaps, be impracticable under a bill to foreclose to indicate the relative rights of the several defendants with requisite certainty, it would be entirely proper under a bill to redeem to make such showing as would fully adjust all rights. Bills to redeem have wider scope, and to be effectual must enable defendants to urge their rights as between and against each other.

However, if the comparative equities of the several defendants can be determined in the present cause, upon

the proofs as taken, this objection would not be relied upon. That they may be, is, perhaps, established by the decision in *Carruthers v. Hall*, 10 *Mich.*, 40.

2. What is Cooper's present position in respect to the amount due him, and the property securing this amount?

By his mortgage there was due to him three thousand six hundred and fifty-five dollars, and interest at ten per cent. That mortgage did not operate to convey lot one, block eighteen, as against subsequent purchasers and incumbrancers. The mortgage described the lot as in block twenty-eight. It is true that it subsequently says, "being on the south-west corner of Fort and Sixth streets." But of two inconsistent clauses in description, that which refers to the legal survey and plat shall prevail, and the parol testimony of John Bigly, introduced on the hearing, can have no effect upon the rights of parties previously acquired. The description of the lot by number and block was a full description, and the words occurring afterwards were general and merely descriptive. — 2 *Greenleaf's Cruise*, 334, *and note; Jackson v. Moore*, 6 *Cowen*, 706; *Melvin v. Proprietors, etc.*, 5 *Met.*, 15; *Drew v. Drew*, 8 *Foster*, 489; *Parker v. Kane*, 22 *How.*, 1.

We claim, therefore, that Cooper's mortgage does not cover lot one, in block eighteen.

3. Conceding, however, for the argument that this position is not tenable, and that the three parcels are included, we insist that the value of the twenty-three feet of the parcel in section seven, which was released by him on May 31st, 1860, after Eldred and Vincent's rights had accrued, should be deducted from the amount of his mortgage.

The release by Cooper seems, by the original bill and answer, to have been contemporaneous with that by the subsequent mortgagee, the insurance company; Cooper,

therefore, knew of the existence of that mortgage. — *James v. Brown*, 11 *Mich.*, 26.

The record shows such a complication of rights, through the action of Cooper, that if loss is to be sustained by either creditor, he should bear the burden. — *Bailey v. Gould, Walk. Ch.*, 478.

4. Courts of equity direct the marshalling of securities, to the end that equal justice shall, as far as practicable, be done to all parties. They have in view the protection of the debtor and the creditor, and they will not so order the sale of the property, as injuriously to affect the interests of the debtor. — *Willard's Eq. Juris.*, 337, *etc.*

What purpose had John Bigly in view in expressly excepting the Cooper mortgage from the covenants in his deeds? What else could it have been than to make that property subject to and specially chargeable with the mortgage?

Although we do not claim that Thomas B. Bigly was personally liable to pay the Cooper mortgage, we insist that it is necessarily implied that the property conveyed to him should be chargeable with it. — 1 *Lead. Cases in Eq.*, 454; *Jamel v. Jamel*, 7 *Paige*, 591; *Ferris v. Crawford*, 2 *Denio*, 595; *Cumberland v. Codrington*, 3 *Johns. Ch.*, 261; *Mason v. Payne, Walker's Ch.*, 463.

But Thomas B. Bigly has not even asked the Court, by any pleading, for any discrimination in his favor. Even if he had, he must show himself a *bona fide* purchaser. The property must have been fairly and honestly aliened by the debtor to bring the case within the rule as to sales in inverse order. The rule is not based upon the mere fact of a prior conveyance, or the maxim, *Prior est in tempore, potior est in jure.* It rests upon superior equity, and if the party seeking its application holds a title affected by fraud, or if it is surrounded by circumstances which withdraw it from equitable pro-

tection, the rule does not apply. — *Peck v. Ellis*, 2 *Johns. Ch.*, 136 ; *Guien v. Knapp*, 6 *Paige*, 35 ; 2 *Lead. Cases in Eq.*, 202, 209.

CAMPBELL J. :

This is a suit brought to obtain a marshalling of securities, and to enforce the application of certain mortgaged lots before recourse is had to a parcel of property covered by the same mortgage, but claimed to have been disposed of before the other premises, and, therefore, not liable until the other property has been exhausted.

John Bigly, July 12, 1853, mortgaged to David Cooper three parcels of land in Detroit — one on Woodward avenue, one on Fort street, and one on Detroit river. A question arises concerning the description of the Fort street lot, which will be referred to in its place. On the 29th day of April, 1856, he mortgaged the Woodward avenue lot to the Michigan Insurance Company. On the 10th day of September, 1857, he conveyed the river lot to Thomas B. Bigly in fee. On the 5th day of April, 1859, he mortgaged the Fort street and Woodwood avenue lots to Francis E. Eldred. On the 20th of October, 1859, an execution was levied on the Fort street lot, in favor of one William H. Pattison, and January 11th, 1860, the lot was bid off at sheriff's sale by Frank Vincent, who received a deed May 20, 1861.

May 31, 1860, Cooper and the Michigan Insurance Company released a portion of the Woodward avenue lot. August 8, 1860, the Insurance Company filed a bill to foreclose their mortgage, and the property was bid off by an agent, and conveyed back to the Michigan Insurance Bank, (a new corporation, succeeding to the rights of the old one,) December 1, 1862. December 10, 1860, Cooper received a deed from John Bigly of the Woodward avenue and Fort street lots. The Insur-

13 MICH. — 2E.

ance Bank filed a bill, October 13, 1862, to compel Cooper to foreclose his mortgage, and sell the property in the inverse order of alienation. Cooper subsequently purchased the title of the Insurance Bank, and filed a supplemental bill to foreclose his mortgage, claiming a sale in the same order of priority. The Court below granted the prayer so far as Cooper's rights were concerned, but as between Thomas B. Bigly and Eldred and Vincent, required the river lot to be sold before the Fort street lot.

The first question which presents itself is, whether the Insurance Company, by its mortgage, obtained any priority over the other parties claiming by subsequent conveyance or incumbrance.

It has always been understood to be the settled law of this State that, where mortgaged premises are conveyed or incumbered in parcels, they are, upon a foreclosure, to be sold in the inverse order of such conveyances or incumbrances, unless the mortgagee will be prejudiced by having the property sold in parcels — a thing which can never happen where the property, when mortgaged to him, was treated as separate. This doctrine was recognized in *Mason v. Payne, Walker's Ch. R.*, 459, and *Caruthers v. Hall*, 10 *Mich. R.*, 40, in both of which cases the principal exception to the rule was referred to and enforced. The same principle was recognized and explained in *James v. Brown*, 11 *Mich. R.*, 25. It rests chiefly, perhaps, upon the grounds that where one who is bound to pay a mortgage, confers upon others rights in any portion of the property, retaining other portions himself, it is unjust that they should be deprived of their rights, so long as he has property covered by the mortgage, out of which the debt can be made. In other words, his debts should be paid out of his own estate, instead of being charged on the estates of his grantees. Any other rule would be, in effect, to enable him to enjoy for his own benefit that

COOPER v. BIGLY.

which he has once vested in another, and, in a measure, to recall his own grant. The rule cannot, therefore, depend upon the existence or non-existence of covenants of warranty. It depends simply on the fact whether he has or has not seen fit, in making a disposition of a part of his incumbered premises, to charge it primarily with the payment of the incumbrance. Whenever he so charges any part, the purchaser takes it subject to the burden, and the relative date of his purchase is immaterial. — See *cases cited above; Welch v. Beers*, 8 *Allen's R.*, 151; *Kilbourne v. Robbins*, 8 *Allen's R.*, 466. It has, indeed, in several cases cited at the bar, been held that the covenant of warranty was very important, in determining the intent of the mortgagor not to charge the mortgage on the property sold. But there is no satisfactory authority holding that, in the absence of such a warranty, no such intent could be presumed. On the contrary, wherever the doctrine of priority is respected at all, it has been enforced unless an opposite intent was made out. And such appears to us the common-sense inference; for a man owing a debt, for which his own property remains liable, must naturally be supposed to expect to have it paid out of his own means, unless he has bargained to the contrary. And this equity, having arisen in favor of the first purchaser, must remain in his favor against any subsequent equities of other parties derived from his grantor.

There are some States in which all parcels of mortgaged land are held liable ratably. — *See cases collected in notes to Story's Eq. Jur.* §§633, 635, 1233, *a.* — And it has been suggested by Judge Story, and was claimed on the argument, that a purchaser of one lot cannot be expected to search the record for the title of other lots, and, therefore, should not be subjected to equities attaching to them. But this reasoning entirely passes over the well-settled rule, that where a person is obliged

to take notice of a deed, he is bound by notice of all that it contains which can affect him. Having notice of a mortgage covering other lots besides his own, he is bound to ascertain whether those lots have been sold previously, in such a way as to throw any peculiar burden on the one he is purchasing, just as much as whether that lot has been directly, instead of indirectly, conveyed or charged prior to his purchase, by his grantor, or his predecessors, in the title. The registry laws furnish the means for one investigation as easily as for the other. And the construction put upon these laws is in accordance with this view. — *Chapman v. West*, 17 *N. Y.*, 125; *Chase v. Woodbury*, 6 *Cush.*, 143; *Brown v. Simmons*, 44 *N. H.*, 475. This latter case is a well considered case, and collects the authorities quite fully upon the whole subject, so that it will not be desirable to multiply the citations.

In the present case, the Michigan Insurance Company became mortgagees before any other rights intervened. They thus obtained a priority; and, having foreclosed their mortgage, and no surplus having arisen from the sale, there is nothing to embarrass their claim to have all the other mortgaged premises sold first, unless the release made by them conjointly with Cooper of a portion of the lot can have this effect. But inasmuch as they are not affected by *subsequent* conveyances of which they had no notice, and as the record is not constructive notice of such subsequent conveyances, neither they nor Cooper can be damnified by this release. It comes entirely within the rule of *James v. Brown*, above cited.

It is claimed, however, that the Fort street lot is not described in, and therefore is not covered by the Cooper mortgage at all, or, if at all, that the description is imperfect for purposes of registry; and it is therefore insisted, by Eldred and Vincent, that their titles are unaffected by that mortgage, no actual notice having

been brought home to them. The description in the mortgage is, "lot number one (1), in *section twenty-eight* (28), on the Forsyth or Porter farm in said city, being on the south'west corner of Fort and Sixth streets." The lot should have been described as *in section eighteen* (18), the other parts of the description being correct.

Inasmuch as in this description there are certain elements which are correct, and one which is incorrect, there could, under no circumstances, be any reason for doubting what property was really meant, unless there were two lots, to each of which a part of the description might apply. If there were any section twenty-eight on the Forsyth farm, then the question would arise whether the description by block and lot, or by streets, was the correct guide. But there is no inflexible rule of law which will, in a case of this kind, prevent the parties from showing by other means which of the two is the erroneous demonstration; and while we do not propose to decide a question not really before us, we shall at least require argument before we shall feel authorized to declare that, when a deed is on record, which *may* be intended for one lot as well as for another, a party is not by such a description put upon inquiry, to ascertain whether it is the one or the other that was conveyed. In the present case, as it does not appear that there is any section twenty-eight on the farm, there could be no ambiguity, and that element must be discarded; and the remainder of the description is sufficient, without any further help, to fully identify the premises. It also appears affirmatively that John Bigly owned no other lot in that part of Detroit, and did own this. We perceive no difficulty in determining the lot intended by the mortgage. The case is plainer, if possible, than that of *Anderson v. Baughman*, 7 *Mich. R.*, 69, where the same question was raised upon a similar error. We think, therefore,

that the Insurance Bank title must be preferred to that of Eldred and Vincent.

There is no doubt of the right of the Insurance Bank to file a bill to protect their title. Although they would have a right to redeem, and then enforce the security in their own favor, yet inasmuch as the equity which they set up is that they should not be compelled to contribute at all, until the other lands are exhausted, and inasmuch as a sale is the only usual means of enforcing a mortgage, the course resorted to is the most appropriate where the mortgage has actually become due, as in this case. In this State, at all events, there can be no question about it, as it has been settled that a bill to redeem may pray a sale of the premises, and that no decree barring redemption without a sale should be made, unless under special circumstances, if at all. — *Baker v. Pierson*, 6 *Mich. R.*, 522 ; *Graydon v. Church*, 7 *Mich. R.*, 36 ; *Emerson v. Atwater*, 12 *Mich. R.*, 314.

Nor do we perceive any legal obstacle in the way of the present complainant. The doctrine is too familiar to need authorities, that a mortgage is not merged by a purchase of a partial or entire interest in the equity of redemption, where there are intermediate rights, or where the interests of the mortgagee require the titles to be kept separate. He could have filed an original bill to foreclose his mortgage, and to protect his rights of priority obtained from the Bank in the Woodward Avenue lot. The fact of his being a mortgagee does not deprive him of the right to purchase and enforce such priorities. — *Chase v. Woodbury*, 6 *Cush.*, 143 ; *Snyder v. Snyder*, 6 *Mich.*, 470 ; *Kilbourne v. Robbins*, 8 *Allen*, 466.

Having sold their entire interest, the Insurance Bank could not properly continue their proceedings, which became defective until their assignee should come in. But the suit did not entirely abate, so as to prevent its

COOPER v. BIGLY.

renewal and continuance by the assignee.    He could file
an original bill in the nature of a supplemental bill, to
set up the change of title, and to obtain the same relief
which could have been had under the original bill. —
*Webster v. Hitchcock*, 11 *Mich. R.*, 56.    This is what
Mr. Cooper has done; and the relief he asks is the pre-
cise relief which would have been granted under the
original bill, namely, a foreclosure by sale of the River
and Fort street lots, in exoneration of the Woodward
Avenue lots, and prior to those.    We think the present
suit is properly framed.

So far, then, as Cooper is concerned, he was entitled
to a decree requiring the mortgaged premises to be sold
in such order that the Woodward avenue lot should be
sold last.    The priorities between the River and Fort
street lots concern only the defendants.    And the question
next arises, whether the conveyance to Thomas B. Bigly
is to be preferred before the rights of Eldred and Vincent.

That his deed is *prima facie* prior in equity to their
claims, is plain from the considerations already referred
to.    But it is claimed that this deed contains a provision
which postpones it.    The deed contains the usual clauses
of warranty; but the warranty and the covenant against
incumbrance, except "*a certain mortgage*," the date and
amount whereof, and the mortgagee's name, are left in
blank.    It was insisted on the argument that this excep-
tion is void for uncertainty.    In the absence of proof of
any mortgage but Cooper's, we are not disposed to
regard it so.    That is certain which can be made certain;
and, until two mortgages appear, there is no ambiguity.
The question, then, arises, whether, by this phraseology,
the Cooper mortgage is chargeable primarily on this lot.
We do not think the language leads to this conclusion.
It only protects the grantor from any liability over, in
case this land should become necessary and be disposed of
to pay the mortgage.    But it does not provide that this

lot shall be charged in preference to the Fort street property, still retained by him; and we think it would be a strained construction to consider this deed as depriving the grantee of any advantage the priority of conveyance would afford him. If the Fort street lot should be insufficient, the warranty without the exception could not have saved this lot, but without the exception John Bigly would have been responsible on his covenants, had it been sold on the mortgage. By inserting this exception, he conveys the property subject to the risk that the remaining property yet unsold and unincumbered will not suffice to pay the debt, and no more. In other words, the deed is, so far as the Cooper mortgage goes, a mere conveyance without warranty; but it is not a conveyance upon condition, or subject to any specific duty or burden. It it quite as effectual as any deed without covenants, and in some respects more so, and the absence of covenants does not vitiate or change a title, or deprive it of priority.

It is claimed, however, that, as against Vincent and Eldred, this deed is void for want of consideration, and as designed to defraud creditors. We do not deem it necessary to examine into the proof of consideration. There is nothing before us which would show that John Bigly was not entitled to deal with the property as he pleased. It does not appear that, at that time, he owed unsecured debts, or was in embarrassed circumstances. But had he been so, it could not concern these parties. They stand on the record simply as subsequent purchasers of other property, having full record notice of this deed, and at liberty to purchase or not, as they saw fit. They have no greater rights than John Bigly would have had if he had not conveyed to Eldred, or if his equity of redemption had not been purchased by Vincent. He could not have revoked his own deed, had it been without any consideration whatever. No one can assail

such a conveyance, except some creditor who has taken the requisite steps to entitle him to resort to the land in payment of a debt, as against which it can be made out to have been fraudulent. — *Fox v. Willis*, 1 *Mich. R.*, 321. Eldred and Vincent, so far as the present case goes, stand in John Bigly's shoes, and not in opposition to his rights, as they remained after the deed to Thomas.

We think the Fort street lot should be sold before any resort is had to the River lot.

The decree below must be so modified as to subject the Fort street lot to sale first, and the River lot second. In all other respects it is to be affirmed. The costs of this Court to be paid by Vincent to the complainant.

COOLEY and CHRISTIANCY JJ. concurred.

MARTIN Ch. J. did not concur.