## DELIA A. SANFORD AND ANOTHER *vs.* DAVID HILL.

A mortgagor conveyed whiteacre, a part of a tract covered by the mortgage, to *E*, by a warranty deed, with a covenant against encumbrances, and afterwards blackacre, another part of the tract, by quitclaim deed to *S*, both deeds being duly recorded. Whiteacre by successive conveyances became the prop-

Sanford *v.* Hill.

erty of *D.* *S* having been compelled to pay the whole mortgage debt, brought a bill against *D*, as owner of whiteacre, to compel him to contribute such part of the sum paid as the value of whiteacre was of the value of the whole tract. Held that whiteacre was discharged from the burden of the mortgage debt and that *D* was not bound to contribute.

The conveyance of whiteacre to *E* free from encumbrance, with a record of the deed, was a declaration to all the world that the burden of the mortgage was assumed wholly by blackacre.

If however blackacre should not be sufficient to satisfy the mortgage debt, whiteacre would be liable to make up the deficiency, and the record of the mortgage showed this liability.

The lien of the mortgagee upon the whole land was not affected by the equities that had arisen between whiteacre and blackacre, and in a decree for a foreclosure of the mortgage these equities would not be taken notice of. They could be settled only in a suit between the owners of these pieces.

Upon the conveyance of whiteacre by the mortgagor to *E*, free from encumbrance, *E* agreed by parol to pay a certain sum to the mortgagee upon the mortgage debt, which sum was allowed as part of the price of the land. *D*, the final owner of this piece, bought in good faith for full value, with no notice of this agreement. Held that he was not affected by it.

*D* bought while a foreclosure suit upon the mortgage was pending, and of a party who, purchasing from *E*, had agreed to pay the sum which *E* had promised to pay on the mortgage debt. Held that, having bought in good faith and without notice, the fact that the foreclosure suit was pending did not affect the question of his liability to contribute, this question not being involved in that suit.

BILL for contribution and for a foreclosure; brought to the Superior Court in Fairfield County. The following facts were found by a committee:—

Maria Bouton on the 16th day of September, 1870, made a mortgage of certain real estate to the Norwalk Savings Society to secure a note of $10,000, which mortgage was duly recorded. A part of the land mortgaged was a tract in the village of Norwalk, containing four lots and a gore of land, and bounded upon a city street. The lots were designated upon the trial as *A*, *B*, *C* and *D*.

On the 9th of September, 1871, the said Maria Bouton conveyed to one E. J. Hill the two middle lots, *B* and *C*. This conveyance was by a warranty deed in the usual form, in which no reference was made to any mortgage or incumbrance whatever. This deed was duly recorded. When it was delivered to Hill he was aware of the existence of the previous mortgage, and orally agreed with the said Maria,

through her agent, the petitioner Thomas L. Sanford, to assume and pay as part of the purchase money for the two lots the sum of $600 upon the mortgage, being $300 upon each lot. It was further orally agreed between them that to the extent of this sum he was not to be protected by his warranty deed.

Hill never performed his agreement. He subsequently conveyed lot C to one Orange S. Brown, who paid the Norwalk Savings Society the sum of $300 upon the Bouton note and received from them a release of his lot from the mortgage. The savings bank also released to other parties lot D, so that on the 14th day of August, 1875, the savings bank mortgage covered only lots A and B and the gore. On the 15th of January, 1873, the remaining one of the two lots deeded to Hill, being lot B, the land in question in the present suit, was by him conveyed to Lewis Hubbell and Marshall H. Tolles by a quitclaim deed in the usual form, in which deed no mention was made of any incumbrance upon the premises whatever. Hubbell & Tolles were, however, aware of the existence of the savings bank mortgage and verbally agreed with Hill to assume and pay, as part consideration for the lot, the sum of $300 upon the Bouton note. Hubbell & Tolles paid to the savings bank interest in advance upon the $300, but never paid the principal.

On the 20th day of October, 1873, the said Maria Bouton, by a quitclaim deed in the usual form, in which deed no mention was made of any incumbrance upon the premises, conveyed to the petitioner Delia A. Sanford, the gore and lot A.

There was no evidence tending to show that the said Delia at the time of receiving her quitclaim deed from the said Maria knew of the agreement between the said Maria and E. J. Hill, above stated, or had any knowledge of the mortgage to the savings bank, but the said Thomas L. Sanford, the husband of said Delia and her business agent, was fully informed of all the facts.

On the 13th of August, 1875, Hubbell & Tolles filed their petition in bankruptcy, and were subsequently adjudicated bankrupts, and John H. Smith was subsequently, and prior

to the 1st day of December, 1875, chosen assignee of their estate. By an examination of the town records Smith learned of the Bouton note and mortgage, and from information derived from Hubbell and from the bankrupts' schedules, ascertained that Hubbell & Tolles considered that lot *B*, procured by them from Hill, was charged with the payment of $300 upon that note and mortgage.

On the 14th of August, 1875, the savings bank sold and delivered the Bouton note to Ebenezer Hill, a brother of the respondent, and quitclaimed to him all the land not theretofore released by them from the mortgage, to wit, the gore and the two lots *A* and *B*, adjacent to it, the most southerly one of which lots, *B*, is the one now owned by the respondent.

Ebenezer Hill brought his petition for the foreclosure of the mortgage to the December term of the Superior Court, 1875, making the said Thomas L. and Delia A. Sanford and the said Smith, assignee of Hubbell & Tolles, parties respondent; and at that term a decree was passed finding the amount due upon the note, and ordering the said Thomas L. Sanford and Delia A. Sanford to pay the same with costs and interest, amounting to $1,079.05, on or before the third day of April, 1876, or be foreclosed of all right to redeem the premises mortgaged, and that the said Smith, as assignee, pay the same on or before the tenth day of April, 1876, or be foreclosed, provided the same had not been paid by the said Sanford and wife.

On the 3d day of April, 1876, the petitioners being unable otherwise to raise funds for the payment of the amount called for by the decree, secured a loan of the amount from one Stephen Olmstead. As a part of the security given for the loan, the petitioners, by a warrantee deed free from all incumbrance, conveyed to Olmstead the premises quitclaimed to the said Delia by the said Maria Bouton. Immediately after the execution and delivery of the deed and other security Olmstead paid to Ebenezer Hill, in behalf of the petitioner Delia, in accordance with the decree, the sum of $1,079.05. Both the petitioners and Olmstead regarded the warrantee deed to Olmstead as a deed in trust, the land to be

reconveyed on repayment of the loan, and Olmstead in making the payment acted solely for the interest of said Delia. Before making the payment the petitioners sought to secure from Ebenezer Hill a quitclaim of the gore and lot *A* adjacent to it, upon the payment of an amount claimed to be a proportionate amount of the mortgage, but he refused to receive from them less than the full amount due upon the mortgage with interest and costs.

On the 3d day of May, 1877, in accordance with a decree passed by the Court of Common Pleas of Fairfield County, Ebenezer Hill executed and delivered to the petitioner Delia a quitclaim deed of the land conveyed to him by the savings bank, and delivered to her the Bouton note.

On the 3d day of December, 1875, the day following the service of the foreclosure petition upon him, Smith, the assignee of Hubbell & Tolles, executed and delivered to the respondent a deed of all the interest that had been owned by them in lot *B*, with a covenant of warranty and freedom from encumbrance.

Shortly before this time the respondent had employed one Mead, a real estate agent, to negotiate with Smith for the purchase of lot *B*. Mead knew of the existence of the Bouton note and mortgage, and was informed by Smith that lot *B* was covered by the mortgage, but there was no evidence that Mead or the respondent had, before the delivery of the deed of Smith to the respondent, any knowledge concerning the agreement made by E. J. Hill with Maria Bouton. The respondent authorized Mead to offer Smith $200 for the lot, and Smith agreed to sell the lot to the respondent for that sum, and the respondent paid that sum for it.

Smith at first tendered to the respondent a quitclaim deed of the equity of redemption in the lot. The latter then for the first time became aware of the existence of the mortgage. Believing upon examination that as between himself and Mrs. Sanford, (who then owned the rest of the land covered by the mortgage,) it was, in the condition of the title, her duty to pay the whole mortgage, and that she could be obliged to do so, the respondent communicated his belief to Smith, and refused

to take a deed of the equity of redemption and required a warranty deed, which Smith gave, Smith substituting that for his quitclaim deed, because he believed that the form of the deed given by him was immaterial so long as he conveyed only the interest of Hubbell & Tolles.

The value of lot *B* was at the time of the execution of the Bouton mortgage, and still is, four-seventeenths of that of the whole tract foreclosed by Ebenezer Hill.

All the conveyances mentioned were duly recorded in the land records of the town of Norwalk. The petitioners, before bringing their petition, requested the respondent to pay a proportional part of the amount paid by them to Ebenezer Hill, but he refused so to do.

Upon these facts the court (*Beardsley, J.,*) passed a decree in favor of the petitioner, foreclosing the respondent unless he should pay to the said Delia A. Sanford the sum of $282.59 with interest and the costs of the petition on or before the first Monday of April, 1878.

The respondent filed a motion in error and brought the record before this court, assigning as errors—1st. That the court erred in deciding that the decree in the foreclosure suit brought by Ebenezer Hill against Smith and the petitioners, did not preclude the petitioners from a recovery under their present petition, in that this respondent's grantor was by the terms of the decree expressly preferred to the petitioners in the redemption of the mortgage. 2d. In deciding that the respondent is in equity obliged to pay the petitioners that proportion of the mortgage debt paid by them which the value of his lot bears to the value of the whole tract subject to the mortgage, or be foreclosed.

*J. H. Perry*, for the plaintiff in error.

1. It is the policy of our laws that the title to real estate should appear of record, and claims upon it or rights concerning it which do not so appear, will not be enforced against purchasers for value without notice. *Orvis* v. *Newell*, 17 Conn., 97; *Bush* v. *Golden*, id., 594. Purchasers for value and without notice may, of right, stand upon their record title.

2.   The petitioners, holding, as they do under a quit-claim deed from Maria Bouton, "stand in her shoes," and have no better title than she had of record at the date of their deed.

3.   At the respective dates of the petitioners' and respondent's deeds the record showed it to be Maria Bouton's duty to pay the whole mortgage, and that the burden of it rested as between the two parcels upon the petitioners' parcel alone. 2 Swift Dig., 184; 1 Hilliard on Mortgages, 325, §§ 57, 66; *N. York Life Ins. & Trust Co.* v. *Milner*, 1 Barb. Ch., 353; *Stuyvesant* v. *Hall*, 2 id., 151; *Cooper* v. *Bigley*, 13 Mich., 463; *Iglehart* v. *Crane*, 42 Ill., 261.   The respondent, knowing only what the record disclosed, and believing his rights to be determined by the above rule of law, purchased his lot and paid what he considered its *full value*.   That he did so is shown by the fact that, before he had any knowledge whatever of the mortgage, he offered $200 for the lot, and never changed his offer, but finally paid that sum.   If Maria Bouton had not sold to the petitioners, but had redeemed the whole mortgage herself, the release deed which would then have been given to her by the mortgagee would (owing to her clear warranty deed to Hill) have vested by estoppel a perfect title in the respondent, and she certainly in that case could not have maintained this action against him.   Are the petitioners in any better position than their grantor would have been? Instead of making the $300 agreement binding upon the land by putting it in the deed, Maria Bouton saw fit to give a clear warranty deed and make a *personal* agreement with Hill. The legitimate effect of her actions should certainly enure to the benefit of a subsequent bonâ fide purchaser for value, and the penalty for the breach of the agreement should rest upon either Hill, or Hubbell & Tolles, the parties who made and were privy to it, and not upon this innocent respondent. If Maria Bouton had received from Hill the full consideration for the lot sold to him, in cash, or part in cash and the balance in his check or note, it could not be claimed that the present action would lie; and wherein lies the difference between a note or check, which is but a promise, and the promise to pay part of the debt which the grantor owed?

She gave so far as she was able an absolute title, and so proclaimed it to the world, taking in part payment therefor a promise. This has been broken, but the respondent is not a party to its breach. The petitioners evidently abandoned the idea that the $300 agreement could be enforced against the respondent, and so only prayed for in their petition, and only got from the court below, a decree for "a proportionate part of the mortgage debt" as paid by them. They thus concede that a parol agreement, of which he had no notice, cannot be made binding upon the respondent, and fall back upon the proposition that it is impossible by any form of conveyance as between the owners of the equity to relieve a portion of a whole tract subject to a mortgage of its proportion of that mortgage. It needs no citation of authorities to show that this is not law.

4. The decree foreclosing the original mortgage, in that it preferred the respondent's grantor to the petitioners in their obligation to redeem, met the equities of the case, and forever precluded the claim made in the present suit.

*H. H. Barbour*, for the defendants in error.

1. The Sanfords owning one parcel and David Hill another of the premises mortgaged by Maria Bouton, they were liable to contribute ratably to the payment of the mortgage debt. 1 Story Eq. Jur., § 477; 2 id., § 1233 *a; Osborn* v. *Carr*, 12 Conn., 204. In respect to the mortgage note Mrs. Sanford and David Hill were, therefore, co-obligors, and when the former paid the whole amount due, she was subrogated to the rights of the holder of that note to the extent to which such payment was to the benefit of or on behalf of David Hill. *Smith* v. *Latimer*, 15 B. Mon., 75; *Scribner* v. *Hickox*, 4 Johns. Ch., 530; *Coffee* v. *Tevis*, 17 Cal., 239. And could maintain foreclosure proceedings against him. *Young* v. *Williams*, 17 Conn., 394; *Gilson* v. *Crehore*, 5 Pick., 152.

2. The first claim made by the respondent in his assignment of errors is not well taken, because it does not appear that the respective rights of the parties to this proceeding

were in question in the foreclosure suit brought by Ebenezer Hill. In that suit the court merely inquired into the amount of the debt and the value of the mortgaged premises, and then passed a decree according to the practice mentioned in 2 Swift Dig., 218. A former adjudication between the parties should not be presumed when it is neither alleged in the respondent's answer nor found by the committee. A former decree in chancery acts as an estoppel only as to the facts directly put in issue and found. *Fairman* v. *Bacon*, 8 Conn., 424; *Crandall* v. *Gallup*, 12 id., 366.

3. The second and third errors assigned are based upon the claim that, where there have been successive conveyances of land incumbered by a common lien, the lands are liable, in the hands of the grantees, to contribute to the discharge of the lien in the inverse order of the conveyances. This doctrine has been adopted in several states, but it has been held to apply only to those cases in which the first grantee can equitably claim that his portion should be protected from the mortgage by the other portions. *Beddow* v. *Dewitt*, 43 Penn. S. R., 330; *Britton* v. *Updyke*, 2 Green Ch., 125; *Wickoff* v. *Davis*, 3 id., 227; 2 Story Eq. Jur., § 1233. The case at bar, therefore, is not affected by this doctrine, even though it be the correct one, unless Mrs. Sanford's land ought equitably to protect lot *B* from the whole mortgage debt, and if the doctrine is applicable to this case, it attached at the time the deed was given to E. J. Hill by Maria Bouton. The rule (if there be any rule) is this: that the property remaining in the hands of the grantor at the time of the first conveyance shall stand between the piece transferred by that conveyance and the mortgage debt; and the rule applies when the deed is given if it applies at all. Clearly the land remaining in Maria Bouton's possession was not equitably bound to save E. J. Hill's from the whole mortgage when she gave him his deed, for when the deed was delivered to him he agreed "to assume and pay as part of the purchase money for the two lots the sum of $600 upon the mortgage," and "to the extent of this sum he was not to be protected by his warranty deed." On the contrary, both Hill and the land conveyed to him

were equitably bound to protect Maria Bouton, and the land retained by her, from the mortgage debt to the amount of $600. *Tichenor* v. *Dodd*, 3 Green Ch., 454; *Torrey* v. *Bank of Orleans*, 9 Paige, 649; *Townsend* v. *Ward*, 27 Conn., 615; *Chapman* v. *Beardsley*, 31 id., 117. The agreement of E. J. Hill inured to Maria Bouton's grantee, Mrs. Sanford, and gave her the legal right to insist that lot *B* should be primarily holden for $300 of the mortgage debt. *Baring* v. *Moore*, 4 Paige, 166. That agreement was ratified by Hubbell & Tolles, who purchased lot *B* from E. J. Hill, and was known to Smith, their assignee, so that when the foreclosure of the mortgage was brought lot *B* was unquestionably liable, between the parties, for its proportion of the mortgage debt.

4. The question then is this: Did the purchase by David Hill of lot *B* from Smith, assignee, after the service upon him of the foreclosure petition, relieve the lot from a liability that was resting upon it, and increase Mrs. Sanford's obligation in relation to the mortgage debt? We answer it by saying— 1st. That David Hill could receive from his deed no greater rights than Smith had. As the courts say of heirs, "he sits in the seat of his grantor, and must take all of his equitable burdens."—2d. That he bought the land *pendente lite*, that is, the deed to him was executed after the service of the foreclosure petition upon both the petitioners and David Hill's grantor, Smith, assignee. And as Mrs. Sanford's rights against lot *B* accrued by reason of a payment which she was compelled to make by the decree passed in that foreclosure suit, she has the same right against David Hill that she would have had against Smith, assignee, but for his conveyance. *Lyon* v. *Sanford*, 5 Conn., 546.

PARDEE, J. In 1870 Maria Bouton mortgaged a certain tract of land, with other lands, to the Norwalk Savings Society to secure the payment of $10,000; in 1871 she conveyed a portion of this tract, which we will designate as lot *B*, to E. J. Hill, by a deed warranting it to be free and clear from all incumbrances, which deed was immediately recorded in the town records. When he received it he made a parol

agreement with the grantor that he would pay $300 upon the mortgage indebtedness to the savings bank as part consideration for his purchase. In 1873 he conveyed his interest in the lot to Hubbell & Tolles, by a quit-claim deed, in which there was no mention of any mortgage upon it, which deed was duly recorded. They entered into a parol agreement with Hill to pay the $300 to the bank; neither Hill nor Hubbell & Tolles have ever paid this money, and the last two were adjudged bankrupts in 1875, and John H. Smith was appointed their assignee.

In 1873 Maria Bouton conveyed a portion of the tract originally mortgaged to the bank, which we will designate as lot $C$, to Delia A. Sanford, the petitioner, by a quit-claim deed.

Maria Bouton, by giving a deed of warranty of $B$ to E. J. Hill, so far forth as they and any subsequent purchasers of $C$ are concerned, freed $B$ from the burden of the mortgage and placed it upon $C$; this last lot, upon foreclosure by the bank, must have paid the whole debt if of sufficient value; Hill, by recording his deed, gave notice to all persons of the precise nature and extent of her right to and interest in $C$; under such notice Mrs. Sanford took precisely that right and no greater, presumably taking the fact disclosed by the notice into consideration in establishing the price; Hill's rights in and to $B$ having been previously fixed by the record of his deed are not to be diminished or affected by the subsequent conveyance of $C$.

Ebenezer Hill, having purchased of the savings bank the Bouton note and mortgage, brought in December, 1875, a petition for foreclosure, making the present petitioner, Mrs. Sanford, and Smith as assignee of Hubbell & Tolles, respondents; the court passed a decree foreclosing Mrs. Sanford unless she paid the debt on or before April 3d, 1876, and Smith unless he paid on or before April 10th. Mrs. Sanford paid to Ebenezer Hill the whole amount due upon the mortgage, and received from him the note, together with a conveyance of his interest in $B$ and $C$; and she has brought this present petition to compel David Hill to contribute towards

the sum thus paid such proportion as lot *B* bears in value to lots *B* and *C*. The court below found that proportion to be $282.50, and decreed that he should pay that sum.

The verbal promise to pay $300 on the mortgage debt made by E. J. Hill to Maria Bouton was accepted by the latter as part of the price of the land; this promise was made known to Hubbell & Tolles, who verbally promised E. J. Hill that they would pay this sum. The recorded deeds contain no reference to this agreement, and the case finds that David Hill had no knowledge of it until after he had taken his deed. He is a bonâ-fide purchaser for full value without notice. He is, of course, to be charged with notice that the mortgage covered lot *B*, but the extent of that notice is, that *B* is chargeable in equity only after *C* is exhausted; his ignorance of the private parol agreement releases him from any equitable duty in reference to it; that agreement being private and unrecorded the effect of it ceases exactly when actual knowledge of it ends.

The rule which imposes the burden primarily upon lot *C*, in the inverse order of conveyance by Mrs. Bouton, is a logical result of our recording system and has a firm foundation in equity; moreover, it is the prevailing rule in this country and in England. In *Clowes* v. *Dickinson*, 5 Johns. Ch., 240, Chancellor Kent referred to *Harbert's case*, 3 Coke, 11, where it was resolved that if a man be seized of three acres and acknowledge a recognizance or statute, and enfeoff *A* of one acre and *B* of another, and the third acre descends to the heir, and execution be sued out against the heir, he shall not have contribution against the purchasers, "for the heir sits in the seat of the ancestor;" and the chancellor adds, in reference to successive purchasers of different portions of incumbered property, that they too may be said to sit in the seat of their grantors. The rule has received judicial sanction in the following cases:—*James* v. *Hubbard*, 1 Paige, 234; *Jenkins* v. *Freyer*, 4 id., 53; *Guion* v. *Knapp*, 6 id., 35; *Patty* v. *Pease*, 8 id., 277; *Skeel* v. *Sproker*, id., 182; *Lyman* v. *Lyman*, 32 Verm., 79; *Shannon* v. *Marselis*, 1 Saxton, 413; *Wickoff* v. *Davis*, 3 Green Ch., 224; *Hinkle*

v. *Altstadt,* 4 Gratt., 284; *Jones* v. *Myrick,* 8 id., 179; *Brown* v. *Simons,* 44 N. Hamp., 475; *Holden* v. *Pike,* 24 Maine, 427; *Shepherd* v. *Adams,* 32 id., 63; *Wallace* v. *Stevens,* 64 id., 225; *Chase* v. *Woodbury,* 6 Cush., 143; *Cooper* v. *Bigley,* 13 Mich., 463.

In Kentucky (*Dickey* v. *Thompson,* 8 B. Monroe, 312,) and in Iowa (*Bates* v. *Ruddick,* 2 Clark, 423,) the rule of equality of contribution among all the purchasers of the mortgaged premises, contended for by the petitioners, is applied; but we think that the weight of judicial opinion is as we have before indicated.

The petitioners urge that, inasmuch as David Hill took his deed of lot *B* from Smith, assignee of Hubbell & Tolles, on a day subsequent to the bringing of the petition for foreclosure by Ebenezer Hill, the purchaser of the note and mortgage from the bank, and as Mrs. Sanford's claim for contribution against lot *B* arises from the fact that the decree upon that petition compelled her to pay the whole debt first in order of time, she now has the same right against David Hill that she would have had against Smith, assignee, his grantor.

But the doctrine of *lis pendens,* that the purchaser of property the title to which is then the subject matter of judicial investigation, is held to have notice of the existing suit and is to be bound by the future judgment or decree therein, does not assist the petitioners. The pending litigation was the petition for foreclosure by Ebenezer Hill, the owner of the original note and mortgage, enforcing the rights held by the bank under that mortgage. Under that, and as between the bank on the one side and Mrs. Sanford and David Hill, subsequent purchasers of lots covered by the mortgage, on the other, the bank, or its assignee, Ebenezer Hill, had the right to receive the amount of the debt from lot *C* or from both *B* and *C;* and the court simply enforced the equities existing between the last named parties, by placing the whole burden primarily upon lot *C.* But it was neither the prayer of the petition, nor the issue of the pleadings, nor the scope of the decree, to determine that lot *B* was liable to contribute to the payment of the mortgage. That question was first

Sanford *v.* Hill.

raised in this proceeding, and remains unaffected by any previous litigation.

There is error in the judgment complained of.

In this opinion the other judges concurred.