### Rawson's Administratrix *v.* Copland.

Where land is conveyed subject to a mortgage for which the grantor is personally liable, and the deed declares that the grantee is to pay the mortgage as a part of his purchase money ; he is liable to the grantor for the amount of the mortgage, *as the same becomes due,* in an action of assumpsit.

If the grantee executes the deed, he will be liable therefor in an action of covenant.

The contract made by the assumption in the deed, is not one of indemnity merely. It is a contract to pay ; and the grantor in the deed may enforce it without actual payment made by him.

The liability of the grantee by force of such an assumption, is a *demand* against him, which in the event of his death, may be set off in favor of the grantor, in a suit brought by the legal representatives of the grantee upon a contract for the payment of money.

B. bought four lots of ground, and executed mortgages thereon to P. for the purchase money. Then B. sold and conveyed the lots to C. subject to the mortgages, which the latter by the deed, was to pay as a part of the price. C. sold and conveyed the lots to R. in the same manner. After R.'s death, the mortgages were foreclosed, the lots were sold, and there was a large deficiency in satisfying the mortgage debt, which B. paid to P. B. then demanded the same of C., who paid him by his own bond and a mortgage on land. In a suit by R.'s administratrix to foreclose a bond and mortgage given by C. to R., it was held that the amount of the deficiency was a demand existing against R. in his lifetime, which C. might set off against the bond and mortgage sought to be foreclosed.

Also held that the costs paid by C. to B. were not within the contract of R., and could not be set off.

Where a creditor accepts the debtor's bond and mortgage in payment, it is as to third persons equivalent to an actual payment. *Semble.*

Nov. 11 ; Dec. 7, 1844.

THE bill was filed to foreclose a mortgage executed by the defendant, to the intestate, Edward B. Rawson, on the 25th of September, 1837, accompanied by a bond of the same date.

The defence was a set-off claimed against the intestate and his estate, under the circumstances stated in the decision.

Besides the principal objection to the proposed set-off, it appeared that no actual payment of the deficiency on the Prince. mortgages, was made by the defendant to Bennem; but the latter accepted as full payment and satisfaction of the demand, the defendant's bond and mortgage to him on other real estate. There was no proof as to the value of this security.

*E. Paine*, for the complainant,

*J. Dikeman*, for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—The revised statutes provide that in suits brought by executors and administrators, demands existing against their testators or intestates, and belonging to the defendant at the time of their death, may be set off by the defendant in the same manner as if the action had been brought by and in the name of the deceased.   (2 R. S. 355, § 23.)

In suits for the payment or recovery of money, in the court of chancery, set-offs are to be allowed in the same manner and with the like effect, as in actions at law.   (2 ibid. 174, § 40.)

It has been decided in this court, that on a bill to foreclose a mortgage, or to obtain satisfaction of the amount due from the defendant, he may set-off a debt due to him from the complainant which would be the proper subject of set-off in a suit at law brought by the latter to recover the amount due.   The debt thus to be set off, must be actually due at the commencement of the suit; and unliquidated damages cannot be set off against a mortgage. (*Chapman* v. *Robertson*, 6 Paige, 627; *Holden* v. *Gilbert*, 7 ibid. 208; *Jennings* v. *Webster*, 8 ibid. 503; *Roosevelt* v. *Bank of Niagara*, Hopkins' R. 579.)

The inquiry in this case, therefore, is whether the defendant, in a suit at law brought by the intestate upon the bond accompanying the mortgage now sought to be foreclosed, could have set-off the demand which he has set up in this suit; and whether this was a demand against the intestate at the time of his death.

The material facts on this point are these.   On the 25th of

September, 1835, J. Bennem bought of Anna Prince, four lots in the city of Brooklyn, and to secure a part of the purchase money, executed to her two bonds and mortgages for $1900 each, payable in five years with annual interest. Each mortgage was upon two of the four lots.

On the 1st of May, 1836, Bennem conveyed two of the lots to the defendant, one of the lots being embraced in one of Prince's mortgages and the other lot in the other mortgage. The consideration expressed in the conveyance was $3200, and it was made subject to the payment of $950 on each of those mortgages, with an assumption thereof by the grantee in these words ; " which said sums are to be paid by the said party of the second part, and form part of the purchase or consideration money above expressed."

On the 1st day of November, 1836, the defendant conveyed the same two lots to the intestate Rawson, for the consideration of $3200 as expressed in the deed, and subject to the payment of $950 on each of the two mortgages executed by Bennem to Prince. The deed contained an assumption of the payment of the same by Rawson, in the same words which were used in the conveyance by Bennem to the defendant.

Rawson died in January, 1840. After the Prince mortgages became due, they were foreclosed, and these two lots were sold in February, 1841. There was a deficiency upon each lot in paying the amount charged upon them respectively, which Bennem was compelled to pay ; and the defendant pursuant to the agreement in his deed paid it to Bennem by a bond and mortgage, before this suit was commenced.

The defendant claims to set off this deficiency against the mortgage in question.

There can be no doubt but that the defendant was liable to Bennem for the deficiency, and that Rawson if he had survived would have been in like manner liable to the defendant. (*Halsey v. Reed*, 9 Paige, 446.) If this suit had been commenced by the intestate himself, the defendant's right to make the set-off would have been perfect, assuming the payment to have been made. But it is contended by the complainant that this was not a demand existing against the intestate in his lifetime.

One test of his position is this. Could the defendant have

maintained an action for this claim in the lifetime of Rawson, provided the mortgages had then been due. The circumstance that the demand was not due and in arrear at the death of the intestate, makes it none the less *a demand* against him.

Nor is it material whether the remedy be at law or in equity.

The complainant's argument is, that there was *no demand* existing, till the defendant had been damnified, and had paid the debt assumed by the intestate. He contends that the intestate's contract was one of *indemnity* merely, and not one which the defendant could enforce, whether Prince called for the money or not.

Now let us suppose, to make the question plainer, that the intestate had signed and sealed the deed, in which he was the party of the second part. It would then be a covenant made with the defendant, that he the intestate would pay $950 on each of the mortgages. No time when he should pay it is expressed, but it would be unreasonable to hold that he was to pay it before the mortgages fell due. To state it in full, it would be a covenant with the defendant, to pay to Prince $950 on each mortgage, as the same became due, for which payment the defendant was liable by his assumption with Bennem. I have no doubt but that on such a covenant, the defendant might have sued the intestate, the moment that the mortgages became due, without paying the money himself or waiting to be damnified.

In *Port* v. *Jackson*, 17 Johns. 239, affirmed unanimously in the Court for the Correction of Errors, ibid. 479 ; one Barlow in 1791, demised a lot of land to Port for 1600 years, at the yearly rent of £32 17. Port assigned the lease to Jackson, and in the assignment Jackson covenanted with Port to perform all the covenants in the lease. The declaration alleged that Jackson had not paid the rent for twenty-four and a half years next preceding. It was objected that Port could not recover, without showing that he had been compelled to pay the rent to the lessor, Barlow ; and that until such payment, the covenant was not broken. The court held that the covenant was broken, the moment the day of payment was past and the rent was left unpaid ; and that Port was entitled to recover the whole amount of the rent unpaid. The distinction is between an undertaking to do an act in *dis-*

Rawson's Administratrix v. Copland.

*charge of the plaintiff,* as to pay his debt; and one to acquit and discharge him from all *damages* by reason of his debt or obligation.

The reasoning of Judge Van Ness delivering the opinion of the Supreme Court, and of Chancellor Kent, on the writ of error; is elaborate and conclusive.

*In the matter of Negus,* 7 Wend. 499, the question arose upon a bond given by Negus to his partner Sinnott, on purchasing the interest of the latter in their joint operations. The bond recited various contracts and debts for which Sinnott was liable, and the condition was that Negus should apply the property of the firm to the payment of the debts and of all costs and damages to which Sinnott might be liable on account of those debts. It was decided that although this was a bond of indemnity, it was also a bond to pay and discharge the debts, and that Sinnott had *a demand* by virtue of the bond, without showing that he was damnified or that he had paid any of the debts.

The case of Negus was under the statute relative to absconding debtors, and the point there was, as in this case, whether the claim was *a demand.* The decision is therefore directly in point.

There are several authorities in England to the same effect, or applying the same principle. (*Cornwallis v. Savery,* 2 Burr. 772 ; *Hodgson v. Bell,* 7 T. R. 97 ; *Holmes v. Rhodes,* 1 B. & P. 638.)

There is a case in 14 Johns. 177, (*Douglass v. Clark,*) which has been deemed inconsistent with these decisions. It was not argued, and the judgment is very brief; and for its weight, I refer to Chief Justice Savage's remarks in the case of Negus before cited.

I have considered this claim as if it rested upon a covenant arising by the intestate's execution of the deed. The only difference which that makes, is in the form of the remedy. If in the case supposed, the intestate could have been sued in covenant, there is no reason why in the case as it is, he could not have been sued in assumpsit, or in equity. If in the one case, there would have existed a *demand* against the intestate, so there would in the other. In each case it would be a *demand* existing

from the date of the deed, and falling due at the maturity of the mortgages.

In this view, the intestate's obligation was a direct liability in his lifetime, to the defendant, payable at a future day. It was therefore entirely unlike the case of the drawer of a bill, or the indorser of a note, as against the acceptor or maker, before payment by the former.

There is no force in the objection that the damages are unliquidated. The amount which the intestate was to pay was as definite as if he had given his promissory note.

The result is, that the defendant is entitled to set off against the complainant's mortgage debt, so much of the Prince mortgages as was left unpaid by the intestate or his representatives.

As the set-off does not depend upon the fact of payment, it is immaterial whether the transaction between the defendant and Bennem was a payment or not.

Bennem testifies that he received the defendant's securities as payment, and he gave a receipt in satisfaction of the claim. I do not perceive why that ought not to be deemed a payment, especially as it regards third persons; but it is unnecessary to decide the point.(a)

On the principle by which this set-off is sustained, it must be restricted to the balance of the debt which is unpaid by the sale, excluding the costs. The assumption in the deed was a direct promise to pay a specific sum. There was no promise to indemnify the defendant against damages and costs.

The defendant is not entitled to the costs of this suit, and the complainant's costs must be limited to the amount of an ordinary foreclosure where there is no defence.

(a) See on this subject, *Witherby* v. *Mann*, 11 Johns. 518 ; *New York State Bank* v. *Fletcher*, 5 Wend. 85.