CORNELIUS BENTLEY *v.* GEORGE W. VANDERHEYDEN.

Where the mortgagor parts with the fee of the morgaged premises, and the grantee assumes to pay the mortgage as a part of the consideration of the purchasee, a release of the mortgagor under such circumstances, from all liability for the mortgaged debt, is a mere personal discharge, and does not discharge the mortgage security.

HUNT, J. This was an action brought to foreclose a mortgage executed by Marshal Littlefield to Richard Buckbee, dated April 7, 1841, upon certain real estate in the town of Glens Falls. The title to the property at the date of the transaction in question, had become vested in Eleazar S. Vaughn, subject to the payment of the mortgage in suit, and upon the express agreement of Vaughn to pay and satisfy the said mortgage. The mortgagee died in 1846, leaving Daniel D. Gifford as his executor. On the 3d of April, 1852, Gifford, by his agent, received the amount of principal and interest due upon the mortgage, and subsequently executed an assignment of the mortgage to the plaintiff. The defendant alleged that the receipt of the money by the said Gifford, amounted to a payment of the mortgage, and that the same then became and ever after remained a satisfied mortgage. The plaintiff claimed that the money was paid on the 3d of April, not as a payment, but as and for a purchase of the mortgage; that it was expressly agreed at the time, that the mortgage should be assigned to him, and that the assignment to him subsequently executed, was in pursuance of that agreement.

The referee found and reported, as matter of fact, that the consideration for the assignment was paid by the plaintiff, that an agreement was made at the time of such payment, that the mortgage should be assigned to him, and that the subsequent assignment was in pursuance of such agreement. At a subsequent portion of the case, where the facts are again set out, the same finding is repeated, and it is added, that the money paid by the plaintiff for such assignment, was borrowed

by him of Vaughn, the owner of the property, and bound by the mortgage, as a temporary loan.

There was conflicting evidence upon the point of payment or assignment, the testimony of the plaintiff Bentley and of the witness Vaughn, being in direct contradiction to each other. The finding of the referee is conclusive upon us. The General Term not having disturbed or interfered with the question of fact, this court has no power to do so. (Code, § 272.) The defendant, however, strenuously argues, that the finding of fact, that the $600 paid by the plaintiff to Gifford to procure the assignment, was borrowed by him temporarily of Vaughn, is without the support of evidence, and against the evidence, and that we must hold the referee to be in error on that point, and must correct the law as based upon such erroneous finding. Holding the previous and main finding of the referee to be binding upon us, to wit, that the plaintiff himself paid to Gifford the consideration for the assignment, and that it was then agreed that an assignment should be delivered, the finding that the plaintiff borrowed the money of Vaughn is quite immaterial. The transaction between the plaintiff and Gifford must determine the question of payment or assignment. The referee finds distinctly, and after sufficient evidence, that it was an assignment. What is the effect of the statement that Vaughn loaned to the plaintiff the money with which to purchase the mortgage? Simply that he owed that amount of money to Vaughn, or if Vaughn was insolvent as is intimated, then in case of a claim by his creditors, the plaintiff would owe the money to, or would hold the assigned mortgage for the benefit of Vaughn's creditors. It was, however, none the less an assignment by Gifford, and a transfer of property by him to the plaintiff. If it should be conceded in the broadest terms, that as between Vaughn and the plaintiff, the operation was intended as a fraud upon creditors, the case still remains unchanged. As between the plaintiff and Gifford, the transaction was an assignment, and as between the plaintiff and the defendant, if the latter places property in the hands of the former, intending to cheat his creditors, and becomes

himself the victim of misplaced confidence, he is entitled neither to the sympathy nor the aid of the courts. He must bear the unfortunate, but not unfrequent result of his attempted fraud.

As Vaughn, however, testified that the plaintiff soon repaid him the money advanced to him, there is no great room for sympathy in the present case. It cannot be claimed, in opposition to the testimony of the plaintiff, and the finding of the referee, which is to be supported by the intendment of all necessary facts, that the plaintiff was the mere agent of Vaughn, and took and held the assignment for him. This would probably amount to a payment of the mortgage, as is claimed by the defendant's counsel. The referee, however, expressly negatives such result, and we cannot thus indirectly affirm what the referee directly repudiates, as a question of fact. The point of payment for Vaughn through the intervention of the plaintiff, or of a devise by the plaintiff for his own benefit, was distinctly passed upon by the referee, and in favor of the plaintiff. We cannot reverse his decision.

On the 14th of January, 1856, the plaintiff executed a release to Littlefield, the mortgagor, of all liability for the debt secured by the bond and mortgage in question. The referee finds the fact of such release, and finds further that the plaintiff did not intend thereby to release the mortgaged premises from the debt, or to invalidate the lien of the mortgage, but simply to discharge Littlefield from personal liability. He further finds that the premises had been conveyed by Vaughn to one Hoyt, upon the understanding that the mortgage in question was a lien upon the same, and that Hoyt was to pay it. This deed bears date of a period anterior to the release above referred to, and the evidence that there was an agreement in the legal sense, that Hoyt would pay the amount of the mortgage lien, was satisfactory. If necessary, to support the finding, we are bound to hold that the " understanding," mentioned by the referee, was a valid agreement. The conveyance to Vaughn, the grantor of Hoyt, was also upon the express assumption by Vaughn of the payment of this mortgage debt. The case then stands in

this form: Littlefield, the mortgagor, parts with the fee of the estate, which afterward vests in Caleb Hoyt, upon an express agreement by Hoyt that he will assume and pay to the holder the mortgage debt in question. This makes the debt that of Hoyt, and the creditor could sue him personally, to recover the amount, without taking any previous steps against the original mortgagor as against the land. (*Russell* v. *Pistor*, 3 Seld., 171; *Ferris* v. *Crawford*, 2 Denio, 595; *Marsh* v. *Pike*, 10 Paige, 595; *Rawson* v. *Copland*, 2 Sand. Ch., 251.)

In other words, the land became the primary fund for the payment of the money, and the mortgagor's bond was collateral only. (*Tripp* v. *Vincent*, 3 Barb. Ch., 613; *Jumel* v. *Jumel*, 7 Paige, 591.) A release of the mortgagor, under these circumstances, from all liability from the debt, is a personal discharge merely, and does not discharge the mortgage security. (*Tripp* v. *Vincent, supra.*)

We see no error in the decision of the court below, and are of the opinion that the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.