Sanford, J.
[After stating the facts.] — Notwithstanding the evidence I cannot doubt, under all the circumstances of the case, and in view of the express and positive testimony of Ranney, that it was purposely inserted in the deed, in pursuance of the arrangement to that effect, made between Davis and himself, and that it formed the consideration and inducement for the acceptance by Ranney, of John McMullen’s deed to him, and of his assumption therein of David McMullen’s mortgages to the Reformed Dutch Church of Harlem. Ranney testified that the understanding between Davis and himself, that the mortgages were to be assumed on both sides, was explicit. and definite, and that, when he received from Davis the deed from John McMullen, and thereby assumed the *253 mortgages therein mentioned, Davis informed him that the plaintiff’s mortgages had been assumed by David McMullen.
It seems hardly possible, if an understanding thus definite and explicit existed between Ranney and Davis, to the effect that the clause in question should be inserted in Davis’ deed to McMullen, that its insertion therein should be owing entirely to inadvertence or to accident or mistake. The clause is wholly in manuscript, and is interpolated between the printed portion of an ordinary blank form ; whoever wrote it there evidently intended to do so, and it would require stronger proof than the absence from Davis’ mind of any distinct recollection on the subject to satisfy me that no instructions were given to “the scrivener or other person who prepared the said deed,” to have it inserted as an essential feature of the instrument. The deed was prepared and its execution was witnessed and attested by an attorney and counselor-at-law, who must be presumed to have acted with ordinary intelligence and in pursuance of the directions given him by his client. The omission to procure the testimony of that attorney, as well as the testimony of the attorney of McMullen, who acted in his behalf in approving and accepting the deed, is a significant circumstance which cannot be lost sight of in weighing the evidence. The importance of the testimony of McMullen’s attorney appears to have been fully appreciated by the defense, since a vain attempt is made to excuse its omission from the record by showing that he is an invalid and paralyzed ; but there is nothing in the evidence to show that it was impossible, or even that it would have been difficult to obtain his deposition, and no attempt was made to explain or account for the absence of the attorney for Davis.
On the whole evidence my conclusion is, that the clause in question was not inserted in the deed by mis *254 take, or otherwise than for the purpose and with the intent of carrying out .the express understanding and agreement between Ranney and Davis. If it was intentionally inserted by Davis, and there was no mistake on his part in regard to it, it is wholly immaterial whether David McMullen overlooked it or not. No fraud or deception was practised upon him. He was personally present when the deed was delivered, and was also represented by counsel of his own selection. He was bound to know and was legally chargeable with full notice of the contents of the instrument. Moreover, Ranney, as representing the plaintiff, was really a party to the transaction. David McMullen was dealing directly with him. For the conveyance to Ranney, although nominally executed by John, the son of David, was David’s own act and deed. He alone was interested in the transaction. The mortgages assumed by Ranney- in accepting that conveyance, were mortgages for which Davis was personally liable, and he was well aware that the mortgages referred to in the deed from Davis to himself, were mortgages to Ranney. He was, therefore, dealing with Ranney as well as with Davis; and as Ranney was accepting and assuming an obligation for his benefit, in consideration of the obligation assumed by him in accepting the deed from Davis, it should be made to appear that it was not intended or designed by Ranney, as well as Davis, that such an obligation should be imposed upon him, in order to enable him to assert that, the creation of that obligation was a mere inadvertence or mistake. But, however this may be, I entertain no doubt, and unhesitatingly find as a fact in the case, that the assumption clause in the deed from Davis was intentionally inserted therein by Davis, pursuant to his previous agreement with Ranney that it should be inserted. If so, there was no mistake in the matter, for the correction of which the equitable interposition *255 of the court can be invoked. A mistake on one side, in the absence of fraud on the other, does not warrant the court in reforming the instrument (Pennell v. Wilson, 2 Robt. 505; S. C., 2 Abb. Pr. N. S. 466).
It may well be doubted whether a written instrument can be reformed except in a direct suit for the purpose ; but, even in such a suit, no amendment will be made or allowed on the ground of mistake, without the clearest and most satisfactory proof, nor unless it appear that the mistake was mutual (Leavitt v. Palmer, 3 N. Y. 19; Nevius v. Dunlap, 33 Id. 676).
It only remains to determine whether, under the circumstances, the release from Davis to David McMullen operated to discharge the liability incurred by the latter to the plaintiff, when he assumed the mortgages held by her. As already intimated, I am of opinion that, in assuming those mortgages, David McMullen dealt not alone with Davis, his grantor, who was personally liable as mortgagor, but with the plaintiff, as represented by her husband, and that the consideration of such assumption was not merely the grant by Davis, but the assumption by plaintiff’s husband of the mortgages on the First avenue property. The transaction was single and entire. If so, it would be most inequitable and unjust to permit David McMullen’s liability to the plaintiff, incurred by him upon a consideration moving from her, or from her husband acting in her behalf, to be discharged by the action of Davis, and without her authority or consent. But, irrespective of this consideration, I am of opinion that Davis was incompetent to release or discharge the defendant, McMullen, from his covenant to assume the mortgage. If, for any reason, Davis had not himself been' liable for the payment of the mortgages, the assumption clause would have been nugatory and inoperative, and would not have enured to the plaintiff’s benefit except upon the theory above suggested of *256 her .actual participation in the transaction (King v. Whitely, 10 Paige, 465; Vrooman v. Turner, 69 N. Y. 280; reversing 8 Hun, 78). Being liable, his conveyance of the property to the defendant, McMullen, who thereby assumed the payment of the mortgages, placed the latter in the relation of principal debtor to the plaintiff, and thereafter Davis was liable, not as principal debtor, but only as surety.
The liability of McMullen, as principal debtor, to the plaintiff, might have been directly enforced in an action upon the assumpsit, without a foreclosure and without impleading Davis, the original obligor and mortgagor (Burr v. Beers, 24 N. Y. 178).
In such a case, the release of the mortgagor by the creditor does not operate as a discharge of his grantee, who has assumed the mortgage (Bentley v. Vanderheyden, 35 N. Y. 677), and it is difficult to perceive any ground or principal upon which the mortgagor can do more than discharge the liability of the purchaser to himself. As surety of the purchaser, he would be entitled to indemnity from, and recourse against the latter, in case he should himself be compelled to pay. This obligation to himself it would be competent for him to discharge. But if the purchaser, as we have seen, is also primarily liable to another, it would seem that such primary obligation can be discharged only by satisfaction or -by release, duly executed by that other. A release of the principal debtor by his surety would be, quoad the creditor’s rights, res inter alios acta.
There is no precedent or authority for the proposition that the liability of a principal debtor can be discharged by the release of his surety or otherwise, than by the act or deed of the creditor himself. The liability of David McMullen as principal debtor to the plaintiff became fixed and absolute when he accepted the conveyances. No one but the plaintiff was competent *257 to discharge it. Such was the opinion of Mason, J., as expressed in Hartley v. Harrison (24 N. Y. 170). Although the other judges who concurred in the result reached by him disclaimed any intention to pass upon the question, it is clear from the opinion of Com-stock, J., dissenting, that the judgment appealed from had not established the liability of the grantee of the mortgagor to pay the mortgage debt upon the covenant implied from his acceptance of a deed declaring that he assumed it; so that the doctrine that such a covenant can be discharged by the mortgagor and grantor, has not even the authority of the supreme court in that case, from whose judgment the appeal to the court of appeals was taken. The statement which precedes the opinion of the court shows that the judgment appealed from merely directed the sale of the mortgaged premises, and imposed no personal liability for a deficiency upon either the mortgagor or his grantee. The defendants and not the plaintiffs in the action appealed.
The case of Stephens v. Casbacker (8 Hun, 116), furnishes a precedent in favor of the view contended for by the defense ; but the opinion of the court in that case seems to assume that the referee before whom Hartley v. Harrison (as supra) was tried, held that the release by the mortgagor was a valid discharge of the covenant to assume, the mortgage contained in the deed, so far as relates to the. grantee’s personal liability thereon, and that such decision was affirmed both at the general term of the supreme court, and by the court of appeals. It certainly appears in that case that no judgment for deficiency was rendered against the grantee of the mortgagor. But non constat that such judgment was insisted on by the plaintiff; certainly no appeal from the judgment was taken by the plaintiff. He acquiesced in it as it was rendered, and the question whether or not the grantee of the mort *258 gagor was exonerated from personal liability to Mm, if passed upon by the referee, was never before an appellate tribunal, either in the supreme court or in the court of appeals.
It appears from the reporter’s note appended to Stephens v. Casbacker, that the case of Garnsey v. Rogers (47 N. Y. 242), where the court say, in substance, that the valid assumption of a mortgage, made on an absolute conveyance of land, is “unconditional and irrevocable,” was not cited in the points of counsel, and does not appear to have been brought to the attention of the court. Under these circumstances, I cannot regard the case of Stephens v. Casbacker as controlling, and, as it seems to me, at variance with the current of opinion expressed in the other cases to which reference has been made, I venture, with great diffidence, to adopt a different conclusion. I do so the less reluctantly, because it appears that there were special equities in favor of the defendant in that particular case, which would seem to have influenced the court, and which, perhaps, affected its judgment. The defendant had relinquished the possession of the land to his grantor after receiving the release. The contract of sale had been virtually rescinded, and the land had been re-conveyed.
•In Gfarnsey v. Rogers, the assumption clause was not contained in an absolute deed, but in a mortgage, or defeasible conveyance, and the decision of the court in holding that the satisfaction of the mortgage operated to discharge the covenant of the mortgagee to assume, was founded upon this distinction.
It was held there, in the case of a mortgage or defeasible conveyance, where the grantor reserved to himself the right of annulling it by paying his debt, that when he does so he discharges the agreement of his mortgagee to pay the prior mortgage. “ The reservation of this control by the grantor,” it was said, “shows that *259 the agreement was for Ms benefit only, and prevents its enuring to the benefit of any third party.” It is expressly intimated, however, that if the conveyance be absolute and not defeasible, the grantor cannot retract his conveyance nor the grantee his promise or undertaking.”
This exposition of the law applicable to such cases seems to me more in accordance with sound principle than that adopted in Stephens v. Oasbacker, and therefore, with great deference to the learned court which decided that case, I venture to accept and follow what I deem the better opinion.
It may not be out of place to observe that in the unreported case of Ranney v. Peyser, decided at special term of the supreme court in the first department in the fall of 1876, and in another and subsequent action between the same parties tried before Hon. Murray Horrman* as referee (whose opinion has been submit *260 tecLto me), views similar to those now expressed appear to have been entertained and adopted.
Judgment must be rendered in favor of the plaint *261 iff, upon the issue of fact raised by the answer of the defendant McMullen.
Findings may be prepared and submitted by coun *262 sel for plaintiff, together with, proper proofs of default on the part of the other defendants, and a proposed form of final decree.

 The following is the opinion of Hon. Murray Horrmah, the referee in the case of Lafayette Ranney v. Sigmund M. Peyser and John G. Farley, referred to above and dated August 8, 1876.
On April 1 and 2, 1872, the defendant, John G-. Parley, was the owner of certain premises in the city of New York. On April 1, 1872, he executed a bond to Charles Doerfell and Prederich Scholtz, his bond conditioned for the payment of $9,000 on April 1, 1877, with interest payable on October 1 and April 1 in each year. It was covenanted that if the interest should remain unpaid for the space of thirty days after it was due, then the principal sum and the arrears of interest should, at the option of the obligees, become due and payable. Parley and wife executed a mortgage on the premises, dated the same day, to secure the payment of s,uch debt. On April 2,187% Parley executed to the same parties another bond to secure payment of the sum of $3,500, payable May 15, 1875, with interest payable-November 1 and April 1 in each year. This bond was also- secured by a mortgage on the premises. On April 3, 1872, the obligees and mortgagees assigned the bonds and mortgages to Alfred B. Arnold, and they were regularly assigned to and vested in the plaintill May 13, 1875. On October 23, 1872, Farley and wife executed and delivered to the defendant, Sigmund M. Peyser, a deed of the premises *260 covered by the mortgages. No consideration was inserted, but it was declared to be subject to tlie two mortgages now on the premises, amounting in the aggregate to $13,500, the payment of which is hereby assumed by the party of the second part (the said Peyser).
On May 13, 1875, the plaintiff commenced an action of foreclosure of the $9,000 mortgage on the ground of a failure in payment of the interest. The defendant, Peyser, answered, and on January 11, 1876, a judgment of foreclosure and sale was had. The property was sold and the proceeds were insufficient to pay any .part of the second mortgage of $3,500, that amount with all arrears of interest being due. The present action was commenced on March 11, 1876. Judgment is demanded that the defendant, Peyser, pay the said sum of $3,500, interest and costs. On September 18,1873, the defendant, Peyser, conveyed the premises to one Emile Von Schoening subject to the mortgages mentioned, and which were deducted from and allowed to said Von Schoening as part of the purchase money expressed in the deed.
Before the present action was commenced, and on May 31, 1875, Parley executed and delivered to Peyser an instrument of release, by which he released and discharged the said defendant, Peyser, from all actions and demands of every kind, and especially from all liability to pay any moneys mentioned in either of the two mortgages (one of $9,000, and the other of $3,500) mentioned in the conveyance made by him, said Parley and wife, to said Peyser, dated October 33, 1873.
On the same day, Peyser executed to Parley a corresponding release especially discharging him from all liability to pay any of the moneys mentioned in any mortgage on No. 335 Seventeenth street, or No. 514 Sixth avenue, in the city of Brooklyn.
That the interest upon the bond and mortgage for $3,500, mentioned in the complaint herein, was paid down to May 1, 1875; and the interest next became due on November 1, 1875.
The main question in the case is as to the effect of the release given by Farley to the defendant, Peyser, of May 31, 1875. It is insisted that it discharges Peyser from all possible claim which th e plaintiff, as holder of the mortgages, could have against him.
I have gone over the following leading authorities : King v. Whitely, 10 Paige, 465; 1 Hoffman's Ch. 477; Russell v. Pistor, 7 *261 N. Y. 171; Trotter v. Hughes, 12 Id. 74; Hartley v. Harrison, 24 Id. 170; Bentley v, Vanderheyden, 35 Id. 677; Thorp v. Keokuk Coal Co., 47 Barb. 439; and the case of Mellen v. Whipple, 1 Gray (Mass.) 317; approved by Justice Comstock in his dissenting opinion.
I deduce from the cases that in our State these are the rules established. That when the owner of land who has mortgaged it conveys it to another, who assumes the payment of the mortgage for or as part of the purchase money, a twofold relation is constituted : with his grantor, to protect him from any liability, so that if he is compelled to pay the debt, he shall be repaid; and with the mortgagee, that by a species of subrogation, the former may resort to him directly to enforce the payment. The positions of the parties become such that the grantee is the principal debtor, and the grantor a surety. '
Take the rules in the language of Justice Welles, in Russell v. Pistor (7 N. Y. 171). It is a general principle that where the owner of land mortgages it to secure payment of a debt, and afterwards sells the equity of redemption subject to the lien of the mortgage, and the purchaser assumes the payment of the mortgage as a portion of the purchase money, the latter becomes personally liable for payment of the deit to the holder of the mortgage in the first instance, and if the mortgagor be compelled to pay it, he can recover it from the purchaser of the equity of redemption.
How if this is law, it seems utterly incomprehensible how the grantor and mortgagor can release the grantee from his obligation, how the surety can discharge the principal debtor.
The case produced in evidence before me shows that the point of the release was raised in the former action, and Judge Donohue’s decision must be treated as holding it inoperative. I consider it as no more than the opinion and decision of a learned judge at special term upon a question.
But the case of Hartley v. Harrison raises no little difficulty upon the point as to the release. It is contended that there is shown a judgment of the supreme court at general term, unreversed, to the effect that such a release by the grantor is valid. An attentive examination will, I think, warrant these conclusions. That the opinion of Justice Mason involves the result that such release is inoperative. *262 That the opinion of Justice Comstock is decidedly and strongly the reverse. That the judges who concurred in the result arrived at by Justice Mason, expressly refused to pass upon the question, and upon the grounds stated by Judge Comstock, that the point was not raised by the appeal; was not before the court.
Justice Comstock says: “No judgment has been rendered in this case, affirming the personal liability of Joseph Harrison ... to pay the .mortgage- debt. . . . It is unnecessary, therefore, to inquire whether his liability was discharged by the subsequent release from the grantor in that deed.” He proceeds to express his own conviction, that it could be effectual for that purpose.
But if this point was not before the court of appeals on the appeal to that court, how could it have been before the general term on the appeal thereto, so as to make it a point adjudged ? Was there any other question properly before either court than whether the grantee could set up usury in the mortgage by virtue of the release from his covenants contained in the deed to him ? Perhaps an examination of the original judgment roll may show that nothing was adjudged except the direction for a foreclosure and sale. But at any rate, the appeal taken, of course did not raise the question, which the referee determined in the appellant’s favor, and there was no counter-appeal.
The cautious disclaimer of the concurring judges shows at least that the conclusion of the referee was .not so clear that it might be left to an apparent tacit ratification.
Hpon the question raised that the demand in this action should have been included in the former suit it is doubtful whether the plaintiff would have been bound to do so had he been able. But the answer is decisive that when he commenced the former action he had no cause of suit on the present claim. The summons in the other suit was served on Peyser May 14, 1875. The notice of lia pendens was filed on the same day. The principal of the present mortgage became due May 15.