MARY MURRAY, AS ADMINISTRATRIX, ETC., OF HUGH
    MURRAY, DECEASED, APPELLANT, *v.* ARTHUR G. FOX,
    THE BUFFALO GRAPE SUGAR COMPANY AND OTHERS,
    RESPONDENTS.

*Release of a surviving partner—when it releases the estate of a deceased partner—release
    of liability on covenants in a deed—when it does not release the grantor from a prior
    liability to pay a mortgage—evidence—when a witness is not interested within the
    meaning of section 829 of the Code of Civil Procedure.*

This action was brought to foreclose a mortgage given by Arthur W. Fox and
one Williams, as collateral to a bond made in the name of Arthur W. Fox,
under which name the said Fox and Williams were engaged in carrying on
business as partners. The bond and mortgage were given to secure firm debts.
After the death of Fox, the plaintiff compromised with Williams and gave to
him a sealed instrument, releasing and discharging him from all several lia-
bility on account of the bond and mortgage, and all other dealings whatsoever,
and from all joint liability on account thereof, and of notes and other dealings
in connection with said firm or for any cause whatsoever jointly with
Arthur W. Fox or otherwise "but not intending hereby to affect or dis-
charge the liability of said Arthur W. Fox or his estate therefrom, or to affect or
discharge any other security for any of said demands other than the personal
liability of said Horace Williams."

*Held,* that as it was to be assumed, in the absence of evidence to the contrary,
that Williams was at the time of Fox's death and has since remained solvent
and possessed of partnership property, he was the principal debtor, and that
the plaintiffs, by releasing him, against whom as the survivor the plaintiff was
bound to first exhaust his remedy, lost all right to proceed against the repre-
sentatives of Fox upon the bond.

That the Fox heirs were entitled to make this defense as they took by descent
lands which were subject to the mortgage, but that it did not protect them in
this case for the reason that the release did not discharge the mortgage debt,
but was in legal effect a covenant not to sue Williams, which did not defeat
the action to foreclose the mortgage.

After the execution of the bond and mortgage the defendant corporation pur-
chased a portion of the premises covered thereby, receiving a full covenant
warranty deed expressing a consideration of $120,000. Thereafter it released
Williams and the personal representatives, heirs and next of kin of Fox from
liability, past and future, on the covenants in the deed.

*Held,* that the release from liability, on the covenants contained in the deed, did
not release the grantors from their liability to pay the mortgage, nor prevent
the company from recovering from them any amount which it might be com-
pelled to pay to relieve the land from the lien thereof. (BARKER, J., dissenting.)

Upon the trial of this action a stockholder of the defendant corporation was

called as a witness, by the heirs of Fox, and allowed to testify as to personal transactions had with the plaintiff's intestate, which tended to show that the bond had been paid.

*Held*, that, as the company had a right to reimbursement from Williams and the estate of Fox for any money it might be obliged to pay to discharge the land from the lien of the mortgage, it, in a legal sense, derived no benefit from the establishment of the fact of the payment of the bond, and the fact that the witness was a stockholder thereof did not, therefore, render his testimony inadmissible in favor of the heirs of Fox as against the plaintiff. (BARKER, J., dissenting.)

APPEAL by the plaintiff from a judgment, entered in Erie county on the 16th day of November, 1883, in favor of the defendants, upon the decision of Hon. ALBERT HAIGHT, Justice, before whom the action was tried at Special Term.

This action was commenced in this court on the 12th day of December, 1881, to foreclose a mortgage executed on the 14th day of December, 1867, by Arthur W. Fox (since deceased), Horace Williams and wife, to Hugh Murray, the plaintiff's intestate, upon certain real estate situate in the city of Buffalo, a portion of which was conveyed to the defendant, The Buffalo Grape Sugar Company, by the said Arthur W. Fox and Horace Williams, by a full covenant deed (including a covenant against incumbrances), bearing date January, 10, 1874.

The said mortgage was given to secure the payment of the bond of Arthur W. Fox, for $5,600, besides interest, on or before July 1, 1868. The defendants answering were the defendant, The Buffalo Grape Sugar Company, and the heirs of Arthur W. Fox, deceased.

*George C. Greene*, for the appellant.

*Adelbert Moot*, for Fox heirs, respondents.

*Franklin D. Locke*, for Grape Sugar Company, respondent.

BRADLEY, J.:

The bond in this case made by Arthur W. Fox was secured by mortgage made by him and Horace Williams. The trial court found that this bond and mortgage were made to secure the indebtedness of the partnership composed of Arthur W. Fox and Horace Williams, then doing business in the firm name of Arthur W. Fox. And this is supported by the evidence. After the death

of Arthur W. Fox, the plaintiff compromised with Williams and made to him a release duly executed under seal, which by its terms discharges and releases him from all several liability on account of such bond and mortgages, notes, and all other dealings whatsoever, and from all joint liability on account thereof, notes and other dealings in connection with said firm for any cause whatsoever jointly with Arthur W. Fox, or otherwise, "but not intending hereby to affect or discharge the liability of said Arthur W. Fox or his estate therefrom or to affect or discharge any other security for any of said demands other than the personal liability of said Horace Williams." If the liability of the representatives of the deceased partner Fox, and that of Williams upon the bond given to secure the payment of the partnership debts were several and concurrent at the time the release was made in such sense that an action might then have been brought against them together or severally, the release of the personal liability of Williams in view of the reservation clause would not have operated to the discharge of the Fox representatives from liability. The rule in England is that on the death of a member of a partnership there is in equity a several liability of the survivor and the representatives of the deceased partner, so that the latter may in the first instance be sued although the survivor is solvent (*Wilkinson* v. *Henderson*, 1 Myl. & K., 582), and the proposition is so stated by Judge STORY in his Equity Jurisprudence (§ 676). But in this State the law is otherwise. On the death of a partner, the survivor, for all practical purposes, takes the legal title to the partnership property and the place of the firm in respect to its assets and liabilities, and is vested with the possession and management of the property for the purposes of closing up its affairs. (*Egberts* v. *Wood*, 3 Paige, 517; *Nehrboss* v. *Bliss*, 88 N. Y., 600; *Holbrook* v. *Lackey*, 13 Met., 132, 134; *Adams* v. *Hackett*, 27 N. H., 289; 29 Am. Dec., 376; *Kinsler* v. *McCanty*, 4 Rich. L. R., 46; S. C., 53 Am. Dec., 711; *Andrews* v. *Brown*, 21 Ala., 437; 56 Am. Dec., 252.) And the primary liability to pay the firm debts is that of the survivor. The remedy of a creditor at large of the partnership is against him alone unless he is insolvent. (*Lawrence* v. *Trustees, etc.*, 2 Denio, 577, affirming, *Trustees, etc.*, v. *Lawrence*, 11 Paige, 80; *Slatter* v. *Carroll*, 2 Sandf. Chy., 573; *Voorhis* v. *Baxter*, 18 Barb., 592; *Voorhis* v *Child's*

*Executors,* 17 N. Y., 354; *Pope* v. *Cole,* 55 id., 124.) And in that event, or when the legal remedy has been unsuccessfully exhausted against the survivor, the creditors may proceed in equity against the representatives of the deceased member of the firm and his estate. (*Haines* v. *Hollister,* 64 N. Y., 1, and cases before cited.) The burden is upon the creditor to establish the facts which afford the right to so proceed. It is assumed that the survivor Williams was solvent at the time of Fox's death and has remained so, and that as survivor he had the partnership property and effects. His primary liability to pay the debts of the firm would seem to give to the representatives of the deceased partner the *quasi* relation of sureties in respect to remedy against them. And when the plaintiff's right to proceed against Williams, who alone was so primarily liable, was voluntarily surrendered by her, and such surrender consummated by compromise with and release of him in respect to such liability, the right of the Fox representatives to have those debts collected of Williams was violated and cut off, and it would seem they cannot be subjected to liability for such debts. (*Fogarty* v. *Cullen,* 17 J. & S., 397, 398; *Millerd* v. *Thorn,* 56 N. Y., 402; *Colgrove* v. *Tallman,* 67 id., 95; *Dodd* v. *Dreyfus,* 17 Hun, 600.)

It is contended that the terms of reservation in the release of remedy against all parties other than Williams, enables the plaintiff to obtain relief as against the Fox representatives, although their relation is that of sureties. There may be no difficulty in cases where the liability of a surety is concurrent and several with that of the principal debtor to suspend or release the remedy of the creditor against him, when the legal rights of the surety are not prejudiced, but saved by proper words of reservation. In such case the release may be treated as a covenant not to sue the principal. (*Price* v. *Barker,* 4 Ell. & Black., 760; *Couch* v. *Mills,* 21 Wend., 424; *Matthews* v. *Chicopee M. Co.,* 3 Robt., 711; *Bateson* v. *Gosling,* L. R., 7 C. P., 9.) And the remedy of the surety over against his principal by way of subrogation or otherwise being preserved, no legally recognized prejudice results to him. (*Morgan* v. *Smith,* 70 N. Y., 537, 545; *Calvo* v. *Davies,* 73 id., 211, 217; *Hubbell* v. *Carpenter,* 5 id., 171; *Boaler* v. *Mayor,* 19 C. B. [N. S.], 76; *Green* v. *Wynn,* L. R., 7 Eq., 28; affirmed, L. R., 4 Chy., 204.) But here there was a primary liability of the survivor.

And the failure of a completely successful remedy against him, is a condition precedent to the liability of the representatives of the deceased partner for the partnership debts, which distinguishes this case from those cited. (*Miller* v. *Fenton*, 11 Paige, 18, 20.) This proposition depends upon the fact that the liability of the partners was joint only, which may not be entirely free from doubt here. The name of the firm when the bond was made was Arthur W. Fox, and in that name it was executed. The instrument does not, in terms, describe the name as that of the firm as distinguished from the name of the individual. The debts and liabilities intended to be and in fact secured by it were those of the firm, and it referred to the understanding that the mortgage as collateral was to be executed by both Fox and Williams, which was done. No reason is apparent other than that the name of the firm was Arthur W. Fox, for the execution of the bond in that name for its benefit. And it will be observed that the liabilities secured by the bond were for loans before then made and thereafter to be made and for such paper as Murray should thereafter sign, accept or indorse of and for Arthur W. Fox. The trial court in its decision did not express the finding that the bond was executed by the firm, but in support of the conclusion of the trial court it may be implied as found by the expression of the fact that such was the name of the firm and that the bond was made for its benefit.

There is no presumption that the partnership property in the hands of the survivor is insufficient to pay the debts of the firm or that his responsibility is inadequate. The personal liability was that of Williams only. By releasing him the plaintiff has defeated her right to do in the first instance that which is requisite to charge the Fox representatives personally. On the assumption that the bond was only the joint obligation of the firm it follows, if these views are correct, that the Fox representatives were by the release to Williams relieved from personal liability on it.

The Fox heirs have an interest in making the defense as they took by descent land of their ancestor, and if the mortgage continues an existing incumbrance they will have to pay it to protect their title. (1 R. S., 749, § 4.) And they rest such defense on the charge that the plaintiff has voluntarily defeated their right to have the fund primarily chargeable in the

hands of Williams, as survivor of the firm, applied in satisfaction of the mortgage debt for which purpose the latter would otherwise be personally liable. (*Robinson* v. *Robinson*, 1 Lansing, 117.) There may be cases of release of personal liability to pay a debt secured by mortgage without impairing the latter as a lien. That is so where the premises are conveyed by the obligor and mortgagor subject to the mortgage and he is released from personal liability. The mortgaged premises are then the primary fund to pay the debt and the mortgage remains effectual for that purpose. (*Tripp* v. *Vincent*, 3 Barb. Chy., 613; *Bentley* v. *Vanderheyden*, 35 N. Y., [677.) And without such release the grantor, if required to and he does pay the debt, has the right of subrogation as against his grantee and those holding under him (*Johnson* v. *Zink*, 51 N. Y., 333), although there is no personal liability of the grantee to pay it. (*Dey Ermand* v. *Chamberlin*, 88 N. Y., 658.)

But here no relation has been assumed to the premises which separates the mortgage from the debt secured by it, and the Fox representatives and heirs have not in any manner consented to such severance and continued lien of the mortgage. The right to enforce the security is dependent upon the preservation of the debt secured by it. The mortgage is collateral to and the mere incident of the debt, and depends upon the subsisting vitality of it. (*Merritt* v. *Bartholick*, 36 N. Y., 44.) The difficulty in the defense founded upon the release to Williams is that it did not discharge the mortgage debt but was, in legal effect, a covenant not to sue him, and therefore is not available to defeat the action to foreclose the mortgage. (*Price* v. *Barker*, 4 E. & B., 760; *Couch* v. *Mills*, 21 Wend., 424.)

The other ground of defense was that of payment, and the trial court found that the bond and mortgage were in fact paid. The objections and exceptions taken to the admission of evidence hereafter referred to on that question, require the consideration of the relation of the Fox representatives and heirs, and the Buffalo Grape Sugar Company, in respect to the mortgage debt. The latter defendant purchased of Fox and Williams a portion of the mortgaged premises subsequent to the mortgage and took from them a full covenant warranty deed, and afterwards released Williams and the personal representatives, heirs and next of kin of Fox, from liability, past

and future, on the covenants in the deed. The contention on the part of the plaintiff is that this release from the covenants operated to make the deed a conveyance of the equity of redemption only, and changed the relation of the company as that of surety, in respect to the mortgage debt and lien, to that in the nature of principal of its grantors.

A conveyance made without covenant on the part of the grantor is not as between the parties necessarily taken subject to an existing mortgage on the premises, in such sense as to make the land conveyed the primary fund for its payment. In such case the question is one of intent and understanding of the parties to the deed. The payment of the estimated value of the premises conveyed, without deduction of the amount of the incumbrance, is a fact which renders a covenant unnecessary to show that the purchase was not of the equity of redemption only. The consideration expressed in the deed to the company was $120,000, which may, if necessary, be presumed to have been the consideration paid. ( *Wood* v. *McClughan*, 4 T. & C., 420 ; *Peck* v. *Mallams*, 10 N. Y., 528.) The covenants in the deed in that respect are only evidence of intent. (*Cooper* v. *Bigly*, 13 Mich., 474, 475.) When made, the deed contained a covenant against incumbrances, which is very satisfactory evidence that the consideration paid was treated as the full value of the property, and that the duty was that of the grantors to discharge the land from the mortgage lien. ( *Wadsworth* v. *Lyon*, 93 N. Y., 201.) There is nothing in the release of the personal liability of the grantors from the covenant tending to reduce the *quantum* conveyed, or intended to be conveyed, by the deed, or to show that the purpose was to make the conveyance subject to the mortgage or to change the relation of the parties in respect to it. The release left all remedies except that which the covenants gave. It is, therefore, fair to assume that as between those parties the mortgage debt still remained that of the grantors, and the primary duty to relieve the premises of the lien continued with them. And that the right and remedy of the sugar company in the event it should be required to and did pay it, were that of subrogation and indemnity. (*Cole* v. *Malcolm*, 66 N. Y., 363.)

It is otherwise when a conveyance is subject to a mortgage. Then the equity is with the grantor to have it paid from the land,

and although his relation is not strictly that of surety where the grantee has not assumed its payment, yet he has the equitable right of subrogation for his protection. (*Murray* v. *Marshall*, 94 N. Y., 611.) If the view taken is correct, the mortgage debt is that of the grantors, and the grantee has for protection and reimbursement a complete remedy over against the former if required to pay the mortgage debt.

The fact of payment, as found, rested somewhat upon the evidence of Cicero J. Hamlin, who was the owner of stock of the Buffalo Grape Sugar Company. His evidence in this respect had relation to communications and transactions of the witness with the plaintiff's intestate, and was incompetent in behalf of the company defendant, by reason of his interest in the event as to that defendant. (Code Civil Pro., § 829; *Stall* v. *Catskill Bank*, 18 Wend., 466, 473.) This evidence was received in behalf of the Fox parties.

And the question arises whether it was admissible as to them. If the defense of the Fox heirs prevails on the ground of payment of the mortgage debt, the adjudication will inure to the benefit of the Buffalo Grape Sugar Company, so far as to be effectual, to remove an apparent incumbrance, prior to the conveyance to it, and thus relieve the title of the company from it. In that view the adjudication in favor of the Fox heirs will go directly to its benefit. And unless there is some countervailing interest or right in support of his competency, it would seem that the interest of the witness was such as to render his evidence referred to inadmissible for the purpose for which it was received. (1 Greenl. Ev., § 390; *Doe* v. *Tyler*, 6 Bing., 390; *Church* v. *Howard*, 79 N. Y., 415, 420; *Hill* v. *Hotchkin*, 23 Hun, 414; *Hadsall* v. *Scott*, 26 id., 617; *Barton* v. *Scramling*, 31 id., 467.)

But the right of the Buffalo Grape Sugar Company to seek reimbursement from Williams and the estate of Fox, for any amount it might be required to pay to discharge the lien of the mortgage in question upon the land conveyed by Fox and Williams to it, would seem, in the legal sense, to render the company and the witness, as its stockholder, indifferent as to the result of the action, and therefore give competency to his evidence as to the Fox heirs within the rule declared in *Benedict* v. *Hecox* (18 Wend., 490, 503). So far as appears Williams and the estate of Fox are solvent.

The motion to strike out evidence of the witness Damon was founded

on the fact that on his cross-examination it was made to appear that his evidence in chief was of facts not within his personal knowledge and therefore incompetent. The motion to strike it out called upon the discretion of the trial court, and the denial of it was not error. (*Gawtry* v. *Doane*, 51 N. Y., 84; *Stokes* v. *Johnson*, 57 id., 673; *Marks* v. *King*, 64 id., 628; *Platner* v. *Platner*, 78 id., 90; *Miller* v. *Montgomery*, Id., 282.)

It will not be presumed that the evidence was considered, and the contrary appears by the opinion of the trial court.

And although the opinion is no part of the record, it may be referred to for some purposes. (*Snyder* v. *Snyder*, 96 N. Y., 88; *Allen* v. *Allen*, 18 Week. Dig., 184.)

The judgment should be affirmed.

SMITH, P. J., concurred; HAIGHT, J., not sitting.

BARKER, J. (dissenting):

I am of the opinion that the judgment dismissing the complaint should be reversed. If any part of the bond remained unpaid, then the mortgage continues to be a lien on the premises, and the plaintiff was entitled to the usual decree of foreclosure. It is wholly unnecessary in this connection to consider the question whether the personal representatives of Fox would be liable for any deficiency which might exist after the sale of the premises. The release of Williams from all personal liability on the bond did not pay the debt nor impair the securities held by the plaintiff, and she could enforce them for the purpose of securing the payment of her unsatisfied debt. The general rule is that when a debt is secured by a lien on property, either real or personal, and the debtor is released from his personal liability and the debt secured remains unpaid, the lien may be continued and enforced if such was the intention of the parties to the agreement. In this case the intention of the plaintiff not to release the mortgage was plainly expressed on the face of the instrument itself. The words of limitation used to qualify the general language of the instrument are as follows: "But not intending hereby to effect or discharge the liability of said Arthur G. Fox or his estate therefrom, or to affect or discharge any other security for any of said demands other than the personal liability of the said Horace Williams."

The release of Williams, therefore, did not discharge the mort-

gage lien as to so much of the debt as may have remained unpaid at that time. (*Tripp* v. *Vincent*, 3 Barb. Ch., 613 ; *Goodrich* v. *Goodrich*, decided in this Dept., April, 1885, not reported.) Among merchants it is customary to discharge their debtors from all personal liability on their debts and demands, stipulating at the same time not to surrender up such securities as they may hold, but reserving the right to enforce their payment. These provisions are in no wise inconsistent with each other when inserted in an instrument of this character. When taken together they are construed as a covenant on the part of the creditors not to pursue the debtor on his personal promise. In legal effect it is the same as when the mortgagor is discharged from his personal liability under bankrupt laws. (*Newton* v. *Scott*, 9 Mees. & Wels., 434.) A lien on property, as security for the payment of a debt, may exist where no person is liable to pay the debt. In such cases the lien may be enforced by proceedings *in rem*, and such was the nature of this action.

It is wholly unnecessary to determine now whether the release of Williams, the surviving partner of Fox, had the effect to discharge the personal representatives and heirs-at-law of the deceased partner from all liability on the bond. If such was the legal operation of the discharge, the debt still remained unpaid and the plaintiff could enforce all pledges and collaterals held as securities. If these views are correct then it follows that the legal conclusion of the learned trial court that the release of Williams operated to discharge the mortgage as a lien on the lands therein described was erroneous. The referee held as a conclusion of fact that the bond had been fully paid. If this finding is based upon competent evidence, then the complaint was properly dismissed upon the merits. I think, however, that Hamlin was not a competent witness for the personal representatives of Fox, and was disqualified by reason of the provisions of section 829 of the Code of Civil Procedure. The complaint was dismissed generally and upon the merits, and if payment of the bond was established the premises were discharged from the lien of the mortgage. Hamlin, as a stockholder in the Grape Sugar Company, was directly and immediately interested in the issue of fact arising on the plea of payment. The judgment if permitted to stand will be competent and conclusive evidence as between the parties that the mortgage lien has been discharged by pay-

ment of the debt which it was given to secure. The Grape Sugar Company as well as the personal representatives of Fox and his heirs-at-law, all of whom were made parties defendant, can use this record as evidence in their favor in any other action against them or either of them founded on the bond and mortgage, whatever may be the nature or character of the same.

The degree of interest which will disqualify a witness under section 829, is the same as the one which prevails at common law. That rule, as stated by Mr. Greenleaf, is as follows : " The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain, and vested interest, and not an interest uncertain, remote or contingent." (Sec. 390; *Hobart* v. *Hobart*, 62 N. Y., 83; *Miller* v. *Montgomery*, 78 id., 283 ; *Steele* v. *Ward*, 30 Hun, 555.) As Hamlin had a direct pecuniary interest in the event of the action, he should not have been permitted to give the personal conversations he had with the deceased mortgagee, relative to the payments which had been made upon the bond and mortgage. Without placing full and implicit reliance on the evidence of this witness it is difficult to see how the issue on the question of payment could have been found in favor of the defendants, who rely on that particular defense.

If I correctly understand the position of my brethren, with whom I am unable to agree in affirming the judgment, they concede that Hamlin was directly interested in the result of the action, but hold that he was a competent witness for the representatives of Fox and his heirs because his interest on the question of payment was balanced. The position that the witness was indifferent as to the result of the issue of payment is founded on the contention of the respondents, that if it had been determined that the mortgage was a valid lien on the premises and a decree of foreclosure and sale awarded, then the Grape Sugar Company could have paid the decree and been subrogated to the position of the plaintiff and enforced a payment of the bond out of the Fox estate.

If it should be conceded that the Grape Sugar Company, on paying off the mortgage for the purpose of protecting its interest in the premises, could have recourse to the Fox estate for indemnity,

then I do not concur in the argument that Hamlin's interest on the question' of interest were balanced. (1 Greenl. Ev., §§ 399, 420; *Benedict* v. *Hecox*, 18 Wend., 490; *Collins* v. *Ellis*, 21 id., 397; *Wilmot* v. *Richardson*, 6 Duer, 336.) But I do not deem it necessary to consider this question further, as I place my objection to the competency of the witness, on the ground that the Grape Sugar Company would not have had any remedy over against the Fox estate if it had been compelled to pay the bond and mortgage to protect its rights and interests. The release executed by that company, discharging both Williams and Fox from all liability on their covenants contained in their deed conveying the premises to it, had the legal effect to make the deed a mere conveyance of their equity of redemption in the premises, and the rights of the parties should be now determined the same as if such had been the character of the deed at the time of its delivery. The release in effect struck out every covenant in the deed and discharges the grantors from every right of action which the grantee had against them on account of such covenants, and the comprehensive language used is as follows: " The Buffalo Grape Sugar Company has released and discharged, and by these presents does release and forever discharge the said Horace Williams and the personal representatives, heirs-at-law and next of kin of said Fox, from all liability for any cause on account of any covenants contained in the deed, from the said parties to the Buffalo Grape Sugar Company, or on account of any breach in such covenants, past or future."

Treating the conveyance as a quit-claim, the legal presumption is that the grantee paid the grantors, as a consideration for their conveyance, the value of the premises at the time of the conveyance less the amount of the mortgage lien. The general rule on that subject is when the grantor conveys by a quit-claim deed, absolutely silent, as to the outstanding incumbrances of which the grantee has notice, he takes the premises subject to the incumbrances, unless it is made to appear that he paid the full value therefor. (3 Pomeroy's Eq., § 1205; 3 Wash. on Real Prop., 380; *Shuler* v. *Hardin*, 25 Ind., 386.)

If, however, the grantee pays the full value of the premises to the grantor as the consideration for the deed, and there is an existing personal liability on the part of the grantor to pay the debt

secured by the lien, then such liability continues and the debt cannot be shifted on to the lands as the primary fund out of which payment is to be made. In such a case if the grantee pays the lien to save his lands, he may be subrogated to the rights of the creditor and enforce the personal liability of the grantor. (*Wadsworth* v. *Lyons*, 93 N. Y., 201.) But if the amount of the lien be deducted from the purchase-price, then the lands are the primary fund out of which the debt is to be paid as between the parties to the conveyance. Where there are no covenants in the deed, and no reference is made to the incumbrance thereon, the presumption exists that the amount of the lien was deducted from the consideration money.

In *Wadsworth* v. *Lyon* (*supra*) the fact appeared that the grantee paid full value for the lands, and no reference whatever was made on the face of the deed to the incumbrance and it was held that the primary liability of the obligors to pay the bond could not be shifted on to the land, but it is distinctly stated in the opinion of the court that the rule would be otherwise if the incumbrance was deducted from the consideration of the conveyance, or by some agreement between the grantor and grantee charging the primary liability upon the grantee, leaving as between them the grantors to stand as mere sureties for the bonded debt.

In the case at bar there is no finding that the grantee paid full value for the premises, nor any evidence produced from which the fact could be found. It is disclosed by the evidence, and the question is left in no doubt whatever, that the officers of the Grape Sugar Company knew, when they executed the release, of the existence of this bond and mortgage, and that it was not paid up nor discharged. The legal presumption should prevail, as no evidence was produced meeting the presumption that the price paid for the premises was their value, less the incumbrance. The deed contained a covenant against incumbrances, and therefore as soon as the deed was delivered, as well as at the time the release was executed, the grantee had a right of action against the grantors which was satisfied by the discharge. It is impossible to conceive of any purpose on the part of Williams and Fox in procuring a discharge from their covenant, unless it was to be relieved from all liability, present, prospective or contingent, arising from the existence of the mortgage lien at the time of their conveyance. The release may be construed as a

covenant on the part of the grantee not to sue Williams and Fox in any form of action for indemnity in case any portion of the mortgage lien was enforced against the premises, or as an agreement between the grantor and grantee charging the lands, as between those parties, with the primary liability to pay the debt.

For these reasons I think the judgment should be reversed and a new trial granted.

Judgment affirmed, with costs.